EUGENIA W. BEEMAN, Appellee, v. SAMUEL KITZMAN, PAUL-
INE KITZMAN, Appellants.

**Divorce:** FRAUDULENT PROCUREMENT: COLLATERAL ATTACK: EVIDENCE.
1 A decree of divorce rendered by a court which had not obtained
jurisdiction of the parties or whose jurisdiction was fraudulently
invoked, is void, and may be contested by the widow in a proceed-
ing to have her dower admeasured. Evidence considered, and
held, that the court rendering the decree of divorce obtained neither
jurisdiction of the parties nor of the subject-matter.

**Estoppel.** Where it appeared that a wife brought suit for divorce
2 which was dismissed, thereby terminating her attorney's employ-
ment, and such attorney was afterwards employed by the husband
to effect a sale of his land, the representations of the attorney
concerning the wife's interest in the land made without her knowl-
edge did not estop her from claiming dower in the lands, nor did
the subsequent employment of the attorney in the dower proceed-
ing have a retroactive effect so as to bind her by his statements.

**Estoppel:** INNOCENT PURCHASER: NOTICE. A purchaser of land from
3 a husband is charged with notice that the dismissal of a divorce
suit brought by the wife was not an adjudication of her rights,
and that a decree of divorce obtained by the husband in another
State was liable to be impeached for fraud, where he had actual
knowledge of the existence of the same.

**Dower:** ASSIGNMENT: FORUM. Dower may be assigned in equity as
4 well as at law where the petition states facts authorizing the relief,
and it is immaterial that the action is termed one in partition.

**Attorney fees:** TAXATION OF. In a suit against a purchaser of land
5 from the husband, for the admeasurement of the widow's dower,
plaintiff's attorney fees should not be taxed against the defendant.

*Appeal from Keokuk District Court.*— HON. W. G. CLEM-
ENTS, Judge.

SATURDAY, APRIL 9, 1904.

ACTION in equity to set off widow's share in lands.
Decree as prayed, and defendants appeal.— *Affirmed.*

*D. T. Stockman, S. E. Hunn,* and *T. C. Legoe,* for appellants.

*J. C. Beem* and *J. P. Talley,* for appellee.

WEAVER, J.—The plaintiff alleges that she was married to Samuel P. Beeman on October 25, 1895; that at the time of said marriage said Beeman was seised of certain described lands in Keokuk county, Iowa, and that thereafter said Beeman conveyed said lands by deed to the defendant, Samuel Kitzman. She further alleges that she did not join in said conveyance, nor sign nor execute the same, and that she has never at any time relinquished her right of dower in said property; and that since said conveyance her said husband has departed this life, leaving her his widow, and entitled to a one-third in value of all the lands aforesaid. Upon these allegations plaintiff prays that her share in said lands be set apart to her, or, if such partition cannot be made, that a sale be ordered, and the proceeds be divided in proportion to the respective interests of the parties. The defenses relied upon will be noted in the further progress of this opinion.

I. The fact that plaintiff was married to and became the lawful wife of Samuel P. Beeman on or about October 25, 1895, is not seriously disputed, but it is contended that said 1. DIVORCE: fraudulent procurement; collateral attack; evidence. marriage relation was dissolved by a decree of divorce during the husband's lifetime, and that, as a necessary consequence, no right of dower was left in the plaintiff. It appears that Beeman was an old resident of Keokuk county, and at the time of his marriage with the plaintiff was about sixty-one years of age, and had been divorced from a former wife. The circumstances attending this latter matrimonial venture are not very fully disclosed, but enough is shown to indicate that it is not alone the young and immature who marry in haste and repent with celerity. The plaintiff, who was a resident of New York prior to the marriage, very soon returned to that State, and

separation followed within a few months. In July, 1897, Beeman instituted a suit against plaintiff for divorce in the district court of Stutsman county, in the State of North Dakota. Service of summons in said proceeding was made on plaintiff in New York. She did not appear to said suit, and was adjudged to be in default. On October 8, 1897, said court entered a decree finding Beeman entitled to a divorce from his said wife on the ground of desertion, and declaring the said marriage relation dissolved. If this decree is to be considered and respected as a valid and binding adjudication, the plaintiff has no standing in the case before us, and the relief she demands should be denied.

Appellant contends that, the North Dakota court being a court of competent jurisdiction to entertain and try actions for divorce, its decree must be given full faith and credit by us until set aside by some appropriate method of direct attack. If this be correct, then a husband may leave his wife, go to a distant State, and there, by gross fraud, obtain a decree of divorce, which, being regular upon its face, will serve all the purposes of a decree honestly and properly obtained, and bar the wife thus wronged of all her marital rights, unless she takes upon herself the trouble and expense of going to the jurisdiction where the fraudulent divorce was granted, and by appropriate proceedings in that court have the same set aside or annulled. The proposition is not supported by the authorities, and, moreover, is manifestly unjust. A judgment or decree rendered by a court which has obtained no jurisdiction over the parties, or by a court whose jurisdiction is fraudulently invoked against a nonresident who fails or refuses to appear in the action, is void. A void decree is no decree, and its validity may be contested in any court where such pretended adjudication is pleaded. This rule has been repeatedly affirmed in respect to decrees of divorce fraudulently obtained. *Lowe v. Lowe,* 40 Iowa, 220; *Webster v. Hunter,* 50 Iowa, 215; *Whetstone v. Whetstone,* 31 Iowa, 276; *State v. Fleak,* 54 Iowa, 429; *Leith v. Leith,* 39

N. H. 20; *Sewall v. Sewall,* 122 Mass. 156 (23 Am. Rep. 299); *Van Fossen v. State,* 37 Ohio St. 317 (41 Am. Rep. 507); *Andrews v. Andrews,* 188 U. S. Rep. 14 (23 Sup. Ct. Rep. 237, 47 L. Ed. 366); *Bell v. Bell,* 181 U. S. Rep. 175 (21 Sup. Ct. Rep. 551, 45 L. Ed. 804); *Streitwolf v. Streitwolf,* 181 U. S. Rep. 179 (21 Sup. Ct. Rep. 553, 45 L. Ed. 807); *Thompson v. Whitman,* 18 Wall. 457 (21 L. Ed. 897); *Gregory v. Gregory,* 78 Me. 187 (3 Atl. 280, 57 Am. Rep. 792); *Reed v. Reed,* 52 Mich. 121 (17 N. W. Rep. 720, 50 Am. Rep. 247); *People v. Dawell,* 25 Mich. 247 (12 Am. Rep. 260). We must therefore hold that it was competent for appellee to plead and prove that the decree of divorce in Beeman's favor was fraudulently procured. The evidence offered by her fully satisfies us of the truth of her claim in this respect. It is shown without serious dispute that, after the separation between Beeman and plaintiff he continued to make his home on the farm in Keokuk county until in April, 1897, when he went to Stutsman county, in North Dakota. His conduct was in every respect consistent with the idea that his absence from his old home was intended to be merely temporary. He did not part with his property there, left his spare clothing in his room, and intrusted the key to a friend, whom he informed that he was going away to get a divorce. He also sought to keep his destination a secret from his neighbors generally, and to that end provided that the friend referred to should deposit his mail in the railway postal car instead of the postoffice. He appears to have gone direct to North Dakota. While there he lived at hotels and boarding houses, and does not appear to have engaged in business. Promptly at the end of ninety days — the period of residence required by the statute of that State to entitle a person to maintain such action — he instituted his suit for divorce. The decree was procured in October, and within a month thereafter he departed the State. He returned to his home in Iowa, where he remained much of the time until

the spring or summer of 1898, after which he went to Idaho.

These facts, with others disclosed in the record, place it beyond reasonable doubt that Beeman went to North Dakota for the sole purpose of getting an easy divorce, and with no intention of taking up or maintaing a *bona fide* residence in that State. Under such circumstances the court in that State not only obtained no jursidiction over the wife residing in New York, but obtained no jurisdiction of the subject of the action. The Supreme Court of North Dakota has placed this construction upon its statute, and holds that a decree of divorce thus procured is of no validity. *Smith v. Smith,* 7 N. D. 404 (75 N. W. Rep. 783). The court there says: "The statute requiring residence — which means ' domicile ' — for a period of ninety days, as preliminary to starting an action for divorce, is jurisdictional to the subject-matter. * * * Until this prerequisite is met, no lawful service of the summons can be made." The rule thus stated is just and reasonable, and tends to promote good morals. It is unnecessary to pursue this branch of the case any farther. The decree of divorce is shown to have been fraudulently procured, and therefore it does not operate to bar the plaintiff's right to dower in the lands of her deceased husband.

II. It is next claimed that, conceding the decree of divorce to have been ineffectual as an adjudication, plaintiff is estopped to assert a right of dower in these lands as against the defendants. This claim is based on the following circumstances: During the time Beeman was in North Dakota, his wife, by her attorney, J. C. Beem, instituted a suit against him for divorce in the district court of Keokuk county, Iowa. To this divorce he appeared by counsel, and later, after the Dakota decree had been procured, he pleaded it by way of answer as a bar to the relief sought by the wife. After this answer was filed the case was for some reason allowed to languish, and on December 9, 1897, it was dismissed for want of prosecution, and the

2. ESTOPPEL.

relation of attorney and client between plaintiff and Beem was, for the time being, terminated. Thereafter the sale of the land from Beeman to the defendant Samuel Kitzman was negotiated. In that transaction the aforesaid J. C. Beem acted as attorney for Beeman. After making the purchase, defendant, feeling some doubt about Beeman's ability to give a good title to the land, withheld the purchase money for a time, and to satisfy his fears and induce him to pay it over Mr. Beem made an affidavit that in the suit for divorce brought by Mrs. Beeman he had been her attorney, and that from his knowledge of said proceedings and from his knowledge and acquaintance with Beeman, he knew the latter to have been a single man at the time the deed was executed. On the strength of this affidavit and of a certified copy of the Dakota decree, and prompted by a suit brought against him by Beeman, acting through Beem as his counsel, defendant paid over the purchase price. Thereafter, and after the death of Beeman, J. C. Beem was re-employed by plaintiff, and now appears as her counsel, denying the validity of this Dakota decree, asserting that Beeman at the date of the deed to defendant was the husband of plaintiff, and that the title conveyed by said Beeman to the defendant is incumbered by the plaintiff's dower right as his widow. If at the time of making these representations and assurances, by which defendant was induced to accept Beeman's deed, Mr. Beem was the attorney for, or in any proper sense the agent or representative of, Mrs. Beeman, she would unquestionably be estopped from claiming dower in the land. It would be a violation of the fundamental principles of equity to permit a person to induce another to purchase property by vouching for the title of the seller, and then set up a hostile title or interest in himself. It is shown, however, without dispute, that when the suit brought by the plaintiff for divorce was dismissed for want of prosecution in December, 1897, Mr. Beem's employment as plaintiff's attorney ceased, and that he thereupon became attorney for the husband in effecting the

sale of the land to defendant. For his conduct, statements, and representations in this latter employment it is clear plaintiff cannot be held responsible, unless they be shown to have been made with her knowledge and consent; and of this there is no evidence whatever. Indeed, we think if Mr. Beem had not thereafter been re-employed by plaintiff to prosecute a claim so inconsistent with the position taken by him when representing her husband, no one would seriously urge that she could be thus estopped. But it is not the property rights of Mr. Beem which are at stake, nor are we called upon to determine the question of ethics involved in his adjustment to the varying interests of his successive clients. His employment by plaintiff could have no retroactive effect to bind her by statements which he had made against her interest when he was not in her service, and was without authority to represent her in respect to the matter under inquiry.

It is said, however, that, in any event, she should be estopped because of her abandonment of her divorce suit, and her failure to make prompt assertion of her rights in the **3. ESTOPPEL: innocent purchaser; notice.** premises. This contention is not well grounded. The fact that Beeman had married the plaintiff was a matter of public record in the county where the land was situated. Within a few months prior to the conveyance of the land by Beeman there had been pending in the district court of that county a suit by plaintiff for a divorce, which suit had been dismissed without trial, and without judgment on its merits. Of these facts it is apparent the defendant was fully aware. It is true he also knew of the Dakota divorce, and was induced to rely thereon, but he must be held to have known that such decree was liable to be impeached for fraud, and that the dismissal of the plaintiff's divorce suit in the Iowa court constituted no adjudication of her rights. He made no application to or inquiry of the plaintiff herself, but pinned his faith to the deed of the husband alone, the decree of the Dakota court, and the assurances of Beem. He was deceived and misled to his serious

injury, but plaintiff in no manner contributed to his deception. She was a resident of New York, and, so far as appears, had no knowledge or notice of the sale of the land to defendant, or of the means employed to convince him that she had no rights therein. During the lifetime of Beeman her dower right was inchoate only, and gave her no right of possession or control, a failure to exercise which might, under some circumstances, work an estoppel. Beeman died April 7, 1900, and within six months thereafter this action was begun. There was no unreasonable delay, and no good reason is alleged or proven why the widow is not justly entitled to her statutory share in the lands of which her husband was seised during the marriage relation, and to which she has made no relinquishment of her rights. This conclusion doubtless works a hardship to the defendant, but it is a hardship which is not chargeable to the wrong or default of the plaintiff, and she should not be made to suffer for the wrong or default of others.

III. It is objected that this action is in form an action in partition, and that a widow's dower cannot be assigned or set apart in such proceedings. It is a well-established 4. DOWER: rule that dower may be assigned by proceedings assignment; forum. in equity as well as at law. *Thomas v. Thomas,* 73 Iowa, 660. The petition in the case at bar sets up the essential facts showing the plaintiff's right to an assignment of dower in the lands in controversy, and the prayer is sufficient to allow the court to grant that relief. That plaintiff styles the action as one in partition does not necessarily make it such. Under our practice, forms of action are not matters of moment. The inquiry is simply whether the petition states facts upon which the court may order or adjudge appropriate relief, and, if so, the relief will be granted without reference to the name or title by which the plaintiff has designated the proceedings. The action here is neither more nor less than a proceeding in equity to admeasure dower, and this, as we have said, is allowable, equity having concurrent jurisdiction

with law in such cases. *Mundy v. Mundy,* 2 Ves. Jr. 122; *Badgely v. Bruce,* 4 Paige, 98; *Hartshorne v. Hartshorne,* 2 N. J. Eq. 349; *Herbert v. Wren,* 7 Cranch, 370 (3 L. Ed. 374, 7 Ency. Pl. & Pr. 173, 174).

IV. The plaintiff has also appealed from the refusal of the trial court to tax attorney's fees in her behalf, and from certain other rulings made on the trial of the cause. The questions thus raised are not pressed in argument by counsel, and we will not take the time to discuss them. To say the least, the statute providing for the taxation of attorney's fees in partition proceedings is of doubtful application to cases like the one at bar. See *Everett v. Croskrey,* 101 Iowa, 17. While there is no inherent injustice in requiring defendant to yield the " pound of flesh " to which the plaintiff is entitled, we think that under the circumstances it would be going entirely too far to compel him to pay for the knife by which the vivisection has been accomplished.

5. ATTORNEY'S FEES: taxation of.

On both appeals the decree of the district court is AFFIRMED.