IN RE ESTATE OF JOSIAH KEMPTHORNE.

F. E. LAMBERT et al., Appellees, v. REBECCA KEMPTHORNE
et al., Appellants.

JUDGMENT: Vacation—Denial of Probate—Affirmative Fraud. An
1 *affirmative* showing of fraud is necessary in order to justify the
setting aside of an order denying probate of a will. Evidence
reviewed in detail, and held insufficient to show fraud (a) in
the conduct of the attorneys, (b) in the manner in which the
guardian ad litem acted, (c) in the waiver of a jury, (d) in
the failure to object to incompetent testimony, (e) in the be-
lated filing of objections, and (f) in the agreement of bene-
ficiaries under a former will personally to pay certain bequests
contained in the will which was denied probate.

JUDGMENT: Vacation—Judgment Against Minors. Principle recog-
2 nized that a minor may have a *regular* judgment set aside only
on the same showing required of an adult. (Sec. 4091, Code,
1897.)

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

JANUARY 20, 1920.

THIS was an application to set aside a judgment which had been made in said estate, refusing and denying probate of the will. The trial court in this case sustained said application, set aside the prior order and judgment as erroneous, and reinstated the case on the docket for trial. The widow of the deceased and her four daughters, and the husbands of some of them, appeal.—*Reversed.*

*Miller, Parker, Riley & Stewart* and *Miller & Wallingford,* for appellants.

*T. A. Cheshire,* for appellees.

PRESTON, J.—But one witness testified in this case. The other evidence consisted of records, and other documentary evidence. The application in this case, which is denominated petition and motion to set aside, etc., was filed October 25, 1916, and was to set aside the order made August 18, 1916. August 16, 1916, two days before the order denying the admission of the other will to probate, there was filed in the clerk's office an instrument purporting to be the last will of Josiah Kempthorne, deceased, dated November 2, 1907. By this instrument, deceased devised certain real estate to his four daughters, with directions that such property be sold, and the proceeds divided between them. The residue was given absolutely to his wife, Rebecca Kempthorne, who was appointed executrix. The will which was denied probate, and the one now in question, is dated May 12, 1916, and was filed May 22, 1916. Testator died May 13, 1916. In brief, the terms of the last-mentioned paper, after providing for payment of debts, funeral expenses, monument, and the like, make specific legacies to the Organization for the Support of Worn-out

Ministers, Iowa Conference, Associated Charities of Des Moines, Foreign Missionary Society of the M. E. Church, The Association of Des Moines for Sightless Women, Women's Home Missionary Society, Orphan's Home Society, the Church Extension Society; to three of his sons-in-law, $500 each; to his wife, the life use of all property, subject to her consent to prior bequests. Then follows Item four:

"All the rest and residue of my estate shall be divided into ten equal parts remaining at the death of my wife, and not herein specifically devised and shall be distributed as hereinafter stated, viz.: I give and devise the life use of three of said parts for the sole use and personal benefit of my daughter Rebecca K. Lambert which shall be held in trust by the persons who shall administer my estate and be by them paid to her in person or for her use and benefit solely and for her children but no part thereof shall be for the maintenance of her divorced husband, F. E. Lambert, and at her death said trust fund shall be and become the property of her three children or of such of them as shall be living at her death. To my daughter Mrs. Nettie Hudson I give three of said parts to have and to hold to her in her own right absolutely. To my daughter Mrs. Emma J. Haeseler, and to my daughter Mrs. Pearl Ione McQueen, I give and bequeath to each two of said shares or tenth parts. I have made this division on the basis of the children born to my daughters including to each and to the mother individually a share apiece except in the case of Mrs. Lambert to whom I have previously made advancements."

His wife is appointed principal executrix, and two of her daughters associate executrices. The subscribing witnesses to this were Calvin Yoran and Alton F. Dunham. The value of the estate is $100,000 or more, the larger part being realty.

May 22, 1916, appellant Rebecca Kempthorne, surviving spouse of testator, filed her written petition for probate of said will. Thereafter, notice of probate was published in a Des Moines paper, fixing June 19, 1916, at 9 o'clock A. M., as the date of hearing. The hearing on the probate of the will was not had on the date fixed in the notice. June 20, 1916, the court, Judge Dudley presiding, made an order reciting, among other things, that the court's attention had been called to the fact that due notice of the probating of the will in question had been given, and that the widow, who filed the will for probate, and who was present at the time of its execution, is in Des Moines, in poor health; and that her testimony can and should be taken. The time of the court being occupied with other matters, however, it was ordered that the widow give her testimony before a commissioner appointed by the court for that purpose, with power to administer oaths, and that her testimony be taken in shorthand, and filed in the case as a part of the record, to be considered by the court in determining whether the will should be admitted to probate. June 22, 1916, the widow, Rebecca Kempthorne, filed a written application for the appointment of an attorney to represent the minors, Rosamond, Frances, and Carolyn Lambert. This paper recites the filing of the will, giving of notice, etc., and that said will makes the three children of applicant's daughter, Mrs. Lambert, beneficiaries; that said children are nonresidents of Iowa; that Rosamond is 16 years of age, and the other two, 9 and 8, respectively; that they have no general guardian in Polk County, and are not represented in this proceeding by counsel. Thereupon, and on the same date, Judge Ayres appointed E. S. Warren, an attorney-at-law of the Polk County bar, to represent said nonresident minors on the hearing of the petition and probate of the will, and in all proceedings which might be had therein subsequent to his

appointment. On June 22, 1916, Judge Ayres made an order in regard to taking testimony, which recites that the prior order embraced the taking of the testimony of only one person, and that there are others whose testimony should be taken. A commissioner was appointed to take the testimony of C. K. Hudson and wife, and any other person who might be called before him, which was likewise to be taken in shorthand, filed, and used on the hearing. On August 11, 1916, the widow, Rebecca Kempthorne, filed a written application, showing that E. S. Warren, who had been appointed to represent the minors, was in the military service, and would be, for some time to come, and that an additional attorney should be appointed, in the absence of said Warren, in order that the minors might at all times be properly represented. On the same date, Judge De Graff made an order appointing Thomas J. Guthrie to represent the minors, with Warren, and, in Warren's absence, in all proceedings connected with the hearing. On the same date, the widow, Rebecca Kempthorne, by Miller & Wallingford, her attorneys, filed a written application for authority to take depositions of the subscribing witnesses to the will, who reside at Manchester, Iowa, and reciting that it is desired that their depositions be taken, for the purpose of proving the execution of the will. An order was accordingly made on the same day by Judge De Graff, the minors appearing by Mr. Guthrie, their attorney. The order provided that depositions should be taken before any notary public in Delaware County; that the depositions were to be taken in shorthand or longhand, but, if in shorthand, that a transcript thereof, when certified and filed, should be received in evidence; that the depositions might be taken on either oral or written interrogatories, but that, if on oral, one of the attorneys appointed by the court to represent the minors should be present. On August 18, 1916, the four daughters of deceased, Net-

tie Hudson, Emma J. Haeseler, Pearl Ione McQueen, and Rebecca K. Lambert, filed a paper signed by them, objecting to the probate of the will on the grounds that the instrument is not the will of deceased, in that it does not express his intention, and was not drawn in conformity with his wishes; that, at the time of the execution of the will, deceased was so weakened in mind and body, by sickness and disease, that he did not comprehend the import of his acts, nor the contents of the instrument, and did not know or understand the legal effect of the language used; that the instrument is not, in truth, his last will. On the same date, the widow and her four daughters filed a writing signed by them, reciting, among other things, that, as heirs and principal beneficiaries under the will of deceased, in the will on file, and "being desirous that the wishes of the deceased be carried out,  *  *  *  do hereby jointly and severally promise and agree that, in the event the said will of Josiah Kempthorne be set aside, that we will pay, or cause to be paid to each of the parties, persons, or organizations hereinafter named, the amounts set opposite their respective names, the said sums being the amounts of their respective bequests under the terms of the will." Then follows a list of beneficiaries, the parties before mentioned, of bequests amounting to $7,500. It further provides that said sum shall be paid on or before five years from May 13, 1916, and shall not bear interest until paid. This paper was prepared by Mr. Miller some time before August 18th. Mrs. Lambert was not in Des Moines at the time, and the paper was sent to her, at Tacoma, Washington, for her signature. Mr. Miller testifies that he was not acting for anyone except Mrs. Kempthorne, the widow, and that deceased had been a client of his for a number of years. He also says:

"This case was one where the parties had been friends and acquaintances of mine for years, and their desire was

to have the entire matter presented to the court, that the court might take the matter up, and examine it, and do what was right under the circumstances. If the will should be admitted to probate, the court should probate it; if it should not, and was not the will of Josiah Kempthorne, deceased, it should be set aside."

Mr. Miller also prepared the other orders, and applications for appointments of attorneys, etc. The depositions of the two subscribing witnesses were read. That of Mr. Dunham is brief, and recites the signing of the instrument by deceased and by the two witnesses; that he was not there when the will was being written, having been just called as a witness. The other subscribing witness, Mr. Yoran, an attorney of many years' practice, and the one who drew the will, testifies that he only knew deceased as he met him, when called to draw the will; that the son-in-law of deceased, Rev. Hudson, came to the witness to have him draw the will; that he went to the home of Mr. Hudson, where deceased was. He testifies as to the formal signing of the paper; that deceased was in some critical distress, but acted rational, and apparently comprehended all that was said to him; that he judged him mentally sound, and capable of connected thought; that Mrs. Kempthorne explained to witness the main provisions which deceased desired incorporated in his will; that deceased could talk but very little; that the wife explained to witness different provisions, and deceased gave his assent. In regard to the trust provision in the will, witness testifies:

"Owing to the condition in which Mr. Kempthorne was, after arriving at the house, Mrs. Kempthorne, his wife, had an interview with me, at some length, and during our conversation, she alluded in a vague way to family troubles; and I did not feel at liberty to interrogate her closely, as I had received the impression that time was essential, and assumed that she was advising me of all the

conditions which were necessary for me to understand;
and I got the impression from what she said that Mrs.
Lambert and her husband were not living together, and
that their relations were simply unpleasant, and that it
was not to the liking of Mr. Kempthorne that her husband
should have the handling of funds he desired to bequeath
to his daughter, Mrs. Lambert.  I told her that the usual
way in which I was accustomed to arrange matters of that
kind, and that seemed to be safe, would be to have a trustee
appointed, to receive whatever Mr. Kempthorne wanted to
bequeath to his daughter, and this trustee would pay to
Mrs. Lambert the use of the funds, and that the remainder
would go to Mrs. Lambert; and that would be a way af
keeping it out of the control or possession of Mr. Lambert.
After our talk, she went in to where Mr. Kempthorne was,
—I assume she did,—and later called me, and said that the
arrangement would be satisfactory.  In reading over the
will, the language on page 4 was questioned, and, when
read as originally drawn, it called forth an explanation
that Dr. Lambert was divorced from his wife, and that she
had obtained a decree of divorce at some time prior.  I
then said, had I known that, I would have drawn the will
differently: that, if there was a valid decree of divorce,
that he would have no control.  Something was said then
as to whether or no the trusteeship was effectual under
these conditions.  I said it was, and but little was said in
regard to that; and I am not sure whether Mr. Kemp-
thorne asked for any particular explanation; and I thought
that to rewrite. the will might possibly be too much of a
tax on him, but said that I could change it; but it was
concluded to sign it as it was made out.  Q. Is it not a
fact Mr. Kempthorne's condition was such that you did
not think you had time to rewrite the will so that he could
sign it?  A. I thought there was some hazard in the mat-
ter of attempting it at that time.  Q. If you had known

that Mr. and Mrs. Lambert were divorced at that time, you would have drawn the will differently? A. I would have changed it in regard to the trust provision. Q. And you put it in on account of Mrs. Kempthorne telling you that Mr. Kempthorne did not wish Mr. Lambert to have anything to do in handling of any funds left to his daughter, Mrs. Lambert? A. Had I known the circumstances, I would not have made this provision, but I did not wish to inquire into family matters, and thought that they were simply living apart, and that only unpleasant conditions existed. Q. As I understand it, this trust agreement was drawn by you under a misapprehension of a trust fund, at this time? A. It is true. Q. What appeared to be the physical condition at the time Mr. Kempthorne signed the will? A. I noticed that, about the time the writing was finished, that he appeared to be greatly exhausted, and spoke to his wife, who brought him something from another room,—it appeared to be both tonic and a nourishment required by his condition; and I hastened to finish the writing and his signature, as he was in a very weakened physical condition, and was apparently quite exhausted."

The testimony of the other witnesses whose testimony was taken, was presented and read to the court on the hearing of the probate of the will, but was not before the trial court on the hearing of this proceeding for a new trial, and is not before us.

On August 18, 1916, the hearing was had before Judge McHenry, and the order recites, among other things, that it was a regular day of the May, 1916, term of the court; that the matter came on for hearing on the petition of Rebecca Kempthorne, widow, for probate of the will; that Miller & Wallingford appeared as attorneys for proponent, and Thomas J. Guthrie and E. S. Warren appeared for the three minors. It finds that due and legal notice has been given, as provided by law, and the court thereupon pro-

ceeded to hear the testimony.   It further finds from the evidence that the instrument is not, in truth and in fact, the last will and testament of said deceased, and declares the instrument void, and refuses probate.   Mr. Miller testifies that, at the time of the hearing, and after the evidence was introduced, and the evidence heard and depositions read, the trial court stated emphatically that the will could not be admitted to probate, because it did not express the intent of the testator; that he, Miller, made, no argument to the court.   The trial judge has not testified as a wit-ness, as was the case in one of the cases cited and relied up-on by appellees, that he was imposed upon in any way, or that there was anything suspicious or out of the ordi-nary in the proceedings.   Plaintiffs introduced a letter-head of Miller & Wallingford, as follows:

"Jesse A. Miller         MILLER & WALLINGFORD
  J. D. Wallingford              Attorneys at Law
  ———                              Des Moines
  Thos. J. Guthrie                  ———
  Oliver H. Miller
  E. S. Warren             Suite 302 Youngerman Block
  Roy E. Curray            Telephones: Walnut 392"

The evidence shows that Mr. Warren occupied a room in the suite of rooms occupied by the firm of Miller & Walling-ford, and rented the room, and paid rent for it to them. Mr. Guthrie was then a member of the bar, and later a judge of the district court; he occupied a room adjoining the firm of Miller & Wallingford, but he rented it from the Youngerman estate.   The arrangement of the rooms and the hall and the third floor of the building is described, and that all the people who occupy rooms in the south end of the Youngerman Block, going through the main entrance to the rooms of Miller & Wallingford, enter their reception room, and from there to their several rooms.   The undis-puted evidence is that Warren and Guthrie had no connec-

tion with the business of Miller & Wallingford; that they were not partners or employees of that firm, in any sense; that there were a number of cases where Judge Guthrie and the firm were opposing each other; that the men who have been in the suite of rooms, and the rooms connected with that suite, for many years have had their names on the letter heads, although not members or employees of the firm; that the only purpose of having their names appear on the letter head was to make a better showing. Mr. Miller further testifies, as a witness for plaintiffs, as to the purpose of the appointment of a commissioner to take the testimony of Mrs. Kempthorne and the Hudsons, who were then in Des Moines ready to testify: that the matter was explained to the judge; that Judge Dudley was trying a case, at the time the first order was made; that he had not conferred with the widow, at the time she filed the petition for probate; that he thinks the clerk received it by mail from Mr. Yoran, of Manchester; that he did not discuss the matter with either Warren or Guthrie; that Guthrie was present at the taking of the depositions of the two witnesses at Manchester; that he had been attorney in the divorce suit between Lambert and his wife; that the hearing was not called up sooner because the witnesses were nonresidents; that the order to take testimony was similar to like orders frequently made; that, in procuring the orders for the taking of testimony, he acted upon the theory that all parties were in court, pursuant to the notice given; that the application for the appointment of attorneys for the minors was that they might be personally represented; that some of the parties, though not all, talked to him in regard to these matters, and those who did talk with him said they wanted the bequests made by Mr. Kempthorne to the institutions, paid; that they voluntarily suggested it; that deceased was greatly interested in the Methodist Church; that, the first time he saw any of the parties after

the death of Mr. Kempthorne, was after the will had been
sent down from Manchester by Mr. Yoran, an attorney
there; that the widow and two of the daughters then told
him that the will was not as deceased wanted it drawn;
that he told them he did not know what the court would
say about it, but the thing to do was to present the entire
matter to the court, and let the court pass on it; that one
objection the widow especially had was that, under the will,
Lambert might inherit property from one of the children;
that they were wrought up about it, because of the feeling
that had existed for years between Lambert and Mrs. Kemp-
thorne and her husband; that he had not seen Mrs. Lam-
bert; that the attorney appointed by the court as attorney
and guardian ad litem was present, and took part in the
hearing on the probate of the will.  Mr. Miller, testifying as
a witness for the defendants, said that he had known the
Lambert minors and their mother for many years; knows
that the minors have no property in Iowa, and had none
at any time after they removed from the state, about 1914;
knows they were not residents of Polk County on Septem
ber 13, 1916, at the time F. E. Lambert petitioned the court
for the appointment of a guardian for the property of said
minors, and that they were not residents of Iowa at any
time in the year 1916, and have not been since then; knows
that they resided in the state of Washington, and still re-
side there; knows that, at that time, Rosamond was about
16 years old.

Defendants offered in evidence the records showing the
filing, on September 13, 1916, of the petition for letters of
guardianship, order appointing guardian, guardian's bond,
and letters issued; also the withdrawal, on October 9, 1916,
of Reed & Reed, attorneys for Lambert; report and resig-
nation of C. M. Young, guardian, and order for hearing of
report; petition, October 17th, for appointment of a new
guardian; October 21st, order accepting resignation, and

appointing new guardian; October 23, 1916, bond and let-
ters. No notice to Rosamond Lambert or any of the minors
is shown. They offered in evidence the petition of plain-
tiff Lambert, for appointment of guardian, filed September
13th, reciting, among other things, that Rosamond Lam-
bert was 16 years of age, Frances, 9, and Carolyn, 8; that
petitioner is a resident of Polk County; that his said chil-
dren are nonresidents of the state, residing with their
mother, who is also a nonresident of the state; that peti-
tioner and Rebecca K. are divorced, and that Rebecca was
granted the custody of the minor children; that the minors
have no regularly appointed guardian, in Iowa or else-
where, either of their person or property; that the minors
have an interest in real property in Iowa, liable to be lost
unless looked after immediately. The petition asks that a
guardian of the property of said minors in Iowa be appoint-
ed; and that some competent person, other than himself,
be appointed such guardian, because of domestic troubles
theretofore existing between petitioner and his divorced
wife. On that date, C. M. Young was appointed guardian.
Later, Young filed his resignation, and a report, in which
he states that he was induced to consent to act as guardian
on the condition that money would be furnished him to in-
vestigate the matter set forth in the petition, which had
not been done; that he incurred no bills or expenses in
the premises; that he has no property of the minors, and
knows of none belonging to them, except such property in-
terest, if any, as is referred to in the petition. On Octo-
ber 17, 1916, plaintiff F. E. Lambert filed a petition for the
appointment of H. F. Schoen as guardian, reciting the res-
ignation of Young, and asking that Schoen be appointed.
Other proceedings in the guardianship matter were shown,
such as fixing time of hearing of the Young report, posting
of notice, acceptance of resignation, etc. Defendants also
offered in evidence the record of the divorce suit brought by

Rebecca Lambert against F. E. Lambert, and the granting of a divorce to Rebecca Lambert, November 5, 1912, on the ground of adultery, and awarding the custody of the children to Mrs. Lambert, and alimony in the sum of $75 a month, which has not been paid. The divorce case was appealed to this court, and affirmed. *Lambert v. Lambert,* 165 Iowa 367. Upon the suggestion of the trial court in this case that the only thing in the case was whether or not, on the hearing on the probate of this will, the minors were correctly represented, the defendants suggested that this evidence was offered on the theory that, as pleaded by them in their answer, this is not an action on behalf of the minors to protect any of their property interests, but is, in reality, an action by F. E. Lambert to protect what he deems to be a possible contingent interest which he might have as an heir of the children; that Lambert is acting for himself, and has no standing in court to make these objections, or this application for a new trial; that this is material in the case, unless the court should find that the record refusing the probate of the will was proper. Defendants offered in evidence the record in regard to a damage case, entitled F. E. Lambert v. Josiah Kempthorne and Rebecca Kempthorne, being an action for $25,000 for alleged alienation of affections of Rebecca K. Lambert from said F. E. Lambert, the trial of which resulted in a verdict for the defendants in that case, and a judgment against F. E. Lambert for costs, which costs have not been paid.

This is the substance of the record in the case, and the matters recited are all covered by the motion to set aside, and grant a new trial, and the answer thereto. There are 43 different grounds set up in the application. We shall not set them out in detail, but will consider the different points raised.

On May 9, 1918, the trial court in this case sustained plaintiffs' application to set aside the order denying pro-

bate of the will, and granted a new trial, the order recit-
ing, in part, that plaintiffs appear by Mr. Cheshire, their
attorney, and Miller & Wallingford appear for Rebecca,
and the other defendants appear by Miller, Parker, Riley
& Stewart, their attorneys, and further:

"That the order made by this court on the 18th day of
August, 1916, denying the last will and testament of Josiah
Kempthorne, deceased, probation, which will was filed in
the office of the clerk of this court on the 22d day of May,
A. D., 1916, was erroneous, and should be set aside, and
that said last will and testament should be restored to the
probate docket of this court for hearing and determination,
the same as if said order of this court, made on the 18th
day of August, 1916, had not been entered."

The application for new trial alleged, among other
things, that there was collusion between the defendants,
and that they conspired together to procure the order re-
fusing to admit the will to probate, and that the order was
obtained by the fraud of defendants and their attorney,
and that the defense, by the attorneys appointed to act for
the minors, acted in a perfunctory manner; that the pur-
pose was to defraud the minors out of the property given to
them by the will. The trial court did not find that there
was any fraud, but simply held that the prior action of the
court was erroneous. It seems to us that the only ground
upon which the prior order could be set aside would be for
fraud, and that is the ground relied upon by appellees; and
we think no fraud has been shown, unless it be assumed
that acts of appellants and the attorneys which are, or may
be, consistent with honesty and rectitude of purpose, are
construed to be fraudulent. The presumption is in favor of
honesty, and fraud must be proved. There is no dispute in
the evidence.

1. We have doubts whether Lambert, as the alleged
natural guardian of his children, has any standing in the

case, in view of the fact that he is absolutely divorced from his wife, and she has been awarded the custody of the children. It would seem that the very purpose of the trust provision in the will was an attempt to keep the estate entirely beyond his reach. He does not have the custody of the children, and has no responsibility for their care. They are with their mother, in Seattle, Washington. If Lambert can be recognized in the conduct of this litigation, it would simply mean that he is authorized to employ counsel in this proceeding, and in prolonged litigation in the will contest, and possibly make the employment a charge upon the estate of the children, and practically fritter it away, since they have no present right to the property, but a remainder only, subject to the life use of the mother, whose expectancy may be many years. The question was raised in the manner before indicated, but is not covered by the errors assigned. In fact, the question as to the alleged fraud is the principal question argued. In view of the fact that we have reached the conclusion that the case must be reversed on the merits, we do not pass upon the question just suggested.

2. Under our statutes, an action may be brought within five years to set aside a will and the probate thereof, where the will has been admitted to probate without contest, and the right to maintain such action is because the statutes permit it. *Kelly v. Kelly*, 158 Iowa 56. But we have no such statute authorizing the setting aside of an order denying probate, except the general statutes authorizing the setting aside of judgments, or granting a new trial, and doubtless the equitable jurisdiction, where fraud is shown. It is not quite clear, from the record, whether this application was made at the same term or at a subsequent term. It was made within a year. The application is denominated motion and petition, and appel-

1. JUDGMENT: vacation: denial of probate: affirmative fraud.

lants seem to make no serious contention in regard to this.

3. We shall now take up the circumstances, or the more important ones, relied upon by plaintiffs, to show fraud, collusion, and conspiracy. It is plaintiffs' claim that the two attorneys appointed to represent the minors were closely identified with the proponents' attorneys, and that the perfunctory manner in which they performed their duties shows that the minors were not represented and their rights preserved. In the first place, the evidence does not show that the attorneys acted in a perfunctory manner. They, or one of them, went to Manchester, at the taking of the testimony; they were present at the hearing, and appear to have performed their duty. It might be perfectly legitimate that they should have their names printed on the letter heads of other attorneys, and occupy offices on the same floor, or in the same suite. We are asked to assume that, because they had their names printed on the letter heads of proponents' attorneys, and had offices on the same floor, or as a part of the same suite, there was impropriety in their being appointed to represent the minors, and that this shows collusion. We are asked to so hold, in the absence of evidence to show any improper interest in this matter, or collusion, and contrary to the evidence that there was none. These men are shown to be men of standing. We are not prepared under these circumstances, to construe these relations to be fraudulent, when they may properly be construed to be upright; nor does it necessarily follow that they did not perform their duty because they did not demand a jury, and engage in a bitter and expensive will contest. Had they done so, without reasonable grounds, they might have been subject to criticism. Juries are often waived. If the case was fairly presented to the court, no claim of fraud can properly be predicated upon the fact that the case was submitted to the court, as all parties were willing to do. It was, of course, their duty to raise and present

every question and every proper defense affecting the rights of the minors. *In re Guardianship* of *Kimble v. Dailey,* 127 Iowa 665.

It is claimed further by plaintiffs that the attorneys for the minors did not perform their duty, in that they did not object to the alleged incompetent evidence of Rebecca Kempthorne and C. K. Hudson, and did not object to the orders to take the evidence of such incompetent witnesses. It may be conceded that these witnesses were incompetent, under Code Section 4604, to testify as to any personal transactions or communications with the deceased; but they were competent to testify in regard to other matters. The trouble with plaintiffs' contention as to this is that the testimony of such witnesses was not before the trial court in this case, nor is it before us. There is no showing that any question was asked either of these witnesses that was objectionable. We are again asked to assume, in the absence of evidence, that improper evidence was given, and without objection. There was no occasion for objecting to the orders to take testimony of such witnesses, unless it should have been assumed in advance that the witnesses would be asked to give incompetent testimony. The proper time to make the objection to the witness, under Section 4604, is when the witness is sworn. Plaintiffs also complain that the attorneys for the minors filed no answer to the objections filed by the four daughters. We held, in the case of *In re Jones' Estate,* 130 Iowa 177, 186, that no answer or reply to the objections is required.

These are the more important circumstances relied upon by plaintiffs to show fraud on the part of the attorneys appointed to represent the minors, or that they did not perform their duty. There may be some others; but, under the entire record, we think the plaintiffs' claim as to them cannot be sustained.

4. It is claimed by plaintiffs that the making of the

agreement by the widow and four daughters to pay legacies is a circumstance to show fraud, and that the purpose was to silence such beneficiaries, so that they would not interest themselves in the probate of the will. This might be so. But there is no evidence that it was so. On the other hand, such an agreement may have been proper enough. We are again asked to assume that there was an improper motive. There was no secret arrangement, as in the *Zachary* case, infra, to prevent the probate. This agreement was filed on the same day as the hearing,—whether at the same time, does not appear. The evidence, or a considerable part, if not all, had, at that time, been taken. The parties may have considered the possibility or the probability that the court, on such evidence, would set the will aside, and, if it was, that they would be willing to carry out the wishes of the husband and father in regard to bequests to church organizations and others. This they agreed to do personally.

5. It is complained by appellees that the application of Rebecca Kempthorne, by Mr. Miller, for the appointment of an attorney to represent the minors, and for the appointment of a guardian ad litem, and that he prepared the formal orders, are circumstances tending to show fraud and collusion. We fail to see any impropriety in this. Mr. Miller was the attorney for Mrs. Kempthorne, the proponent of the will. If it was necessary and proper that a guardian ad litem, or attorneys, should be appointed for minors, we see no reason why the court's attention should not have been called to the fact that there were minors, and that someone should be appointed to represent them. Had counsel for plaintiff or proponent failed to call the court's attention to the matter, it seems to us he would have been remiss in his duty. We suppose it is done every day, where a plaintiff brings an action against different parties, some of whom are minors, and has a guardian ad litem appointed for the minor defendants. A failure to

do so might have serious consequences. Code Section 3423 provides for the appointment of an attorney to represent minors, and for the substitution of an attorney for the one first appointed; and this was done, in this case. The record does not show, as we read it, that the guardians ad litem were selected by Mr. Miller, as contended by appellees. It was held, in *Harris v. Bigley,* 136 Iowa 307, that the mere fact that a guardian ad litem for infants was appointed at the suggestion of the adverse party, or that such guardian failed to make an active defense, will not constitute fraud authorizing a setting aside of the decree, if it is fairly inferable that the substantial facts in regard to the minors were disclosed to the court.

6. Another circumstance relied upon by plaintiffs is that the objections to the probate of the will by the four daughters were not filed until the day of the hearing. They were filed before the hearing, and that is sufficient. They had a right to file them at any time before. Ordinarily, it would doubtless have been proper for the guardian ad litem, or attorney for the minors, to ask time to investigate and prepare for trial, if necessary. But the case is somewhat out of the ordinary, in this: that the testimony had already been taken, and the attorney for the minors was present, and knew the tendency of the evidence. The proponent and the objectors are shown to have been willing to present the matter to the court, and abide by its decision, whether the will was probated or denied probate.

7. It is thought by appellees that the testimony given by Mr. Yoran, one of the subscribing witnesses, sustains the validity of the will. This evidence has been before set out. This may be so, as to the mental condition of deceased, if this evidence stood alone. What other evidence was introduced, was not before the trial court, nor is it here. It is quite clear, however, even from Mr. Yoran's testimony, that the trust provision in the will was not as the

deceased desired it to be, and that Mr. Yoran did not understand the situation in regard to the divorce, at the time he drew the will, and that Mr. Kempthorne was near the end, and it was thought there was not time to change that provision. Though they finally concluded to let it go, and the will was signed, it was not, as we have just said, as deceased intended. We see no reason why credence should not be given to the testimony of Mr. Miller as to what happened when the court refused to probate the will: namely, that the court said he would not admit the will to probate, in view of the testimony of Yoran. If this was the expressed view of the court, then surely there is no room to claim fraud, even though the court's view had been erroneous. We are, ourselves, inclined to think that there is substance in the reason given by the trial court for not probating the will. The circumstances as to the condition of deceased, and the hurried preparation of the will, have been referred to. Yoran testified that the trust provision was a device of his own to prevent Lambert, as husband, from having any interest in the devised estate, and that the provision was drawn upon Yoran's understanding that Lambert was still the husband of Mrs. Lambert, although living apart from her. His evidence shows that the clause in question was included through his mistake of fact as to the existence of a divorce. The mistake was material, because such clause operates to the benefit of Lambert, in that, if his children died, even during the life of the mother, Lambert would inherit a part of their remainder, and he would thereby be put in a position where he could greatly harass the life estate of his divorced wife.

8. Appellees contend that the filing of the motion and petition to set aside the order denying probate was to correct an error in the judgment, and that, under Section 4091

**2. JUDGMENT: vacation: judgment against minors.**

of the Code, the minors had twelve months, after they arrived at their majority, to correct the error. This section is construed in *Bickel v. Erskine,* 43 Iowa 213, 222; *Buchan v. German Am. Land Co.,* 180 Iowa 911, 914; *Webster v. Page,* 54 Iowa 461. The holdings are that, where the court has jurisdiction, a judgment is binding on minors, as well as adults, and that they will not be permitted to dispute the judgment, unless upon the same grounds that an adult might dispute it, such as fraud, collusion, or error. The cases cited further hold that "error in the judgment or order," in the statute, is not error in fact, but error in the ordinary legal sense of the term,—that is, error in law; and that it is not allowable for the infant to come in, as a matter of course, with a new defense or new evidence, and try the case over again; and further, that error in the judgment is not for fraud practiced by the successful party. That comes under another provision. In the instant case, there is no error of law apparent on the face of the record. If it be claimed that the evidence did not support the order of court denying probate, it would be essential that the evidence be all presented. Only a portion of it was presented. As said, there is nothing in this record to show that any incompetent testimony given by Mrs. Kempthorne or Mr Hudson was in the record, or considered by the trial court. As before stated, the main reliance of plaintiffs was the alleged fraud and collusion in procuring the order denying probate. The notice of the presentation of the will for probate, which was given, and the other proceedings had at that hearing, gave the court jurisdiction to determine the validity of the will.

9. Appellees seem to rely on *In re Estate of Zachary,* 165 Iowa 309; but we think that case is readily distinguished from the instant case. There, fraud was alleged and proven. Here, fraud was alleged, but we think it was

not proven. In that case, on the original hearing, no testimony was offered or introduced in support of the will. The subscribing witnesses were not present or called. In the instant case, the testimony of both the subscribing witnesses was before the trial court, and considered by it at the time the will was denied probate. In that case, upon the trial of the application to set aside the order denying probate, many witnesses were introduced, including one of the witnesses to the execution of the will, testifying that deceased was of sound mind at the time of its execution. In the trial of the instant case, on the application to set aside the order, but one witness was called, and the court did not have before it all of the testimony heard by the court on the prior hearing. In the instant case, the trial judge who denied probate stated that, under the evidence, it was clear that the will should be denied probate. He did not testify on the trial of this proceeding to set aside that order. In the *Zachary* case, at the time of the original order, the trial judge was suspicious of the transactions, and testified on the later proceedings to that fact. In the *Zachary* case, at page 316, the court found that there was an agreement that the person named as executor, whose duty it was to present the will for probate, should receive from the interests of the others in the estate, an amount largely in excess of his distributive share, if the contest was carried to a successful issue. That fact was concealed from the trial court, when the probate of the will was denied. There is no evidence of such an agreement in the instant case, nor is the agreement of the heirs to pay legacies such an agreement. This last-named agreement was on file at the time of the hearing for probate of the will, and presumably was before the court. At any rate, there is no showing, as there was in the *Zachary* case, that this agreement, such as it was, was concealed from the court. Other distinguishing features might be pointed out.

10. Appellees invoke the rule that granting of new trials is within the discretion of the trial court. Ordinarily, the motion for new trial is addressed to and heard by the judge who tried the case. Such is not the situation here. But, in any event, the motion must be based upon some of the grounds permitted by statute for the granting of a new trial. In this case, the motion is based upon the alleged fraud in procuring the original order.

We have discussed the principal grounds relied upon by appellees to show fraud. There may be some others; but the opinion is already too long, and we shall not go into further detail. We have examined the entire record with great care, and reach the conclusion that plaintiffs' contention that Mr. Miller, as attorney for proponent, and his client were acting together, to prevent the probate of the will, and to defraud the minors, or that there was collusion between them and the other parties for that purpose, is not sustained by the record. The fraud is not established.

11. Appellant contends that, since the term had expired, so that a motion to set aside the judgment could not properly be entertained, this proceeding must be under Section 4091 of the Code. We think it is unnecessary to discuss this subject further, and only cite additional cases referred to by appellants on the question of the alleged fraud, and to the proposition that, under that section, no showing was made which justified the court in setting aside the judgment. Such additional cases are *Hedrick v. Smith & Reed,* 137 Iowa 625; *Kelly v. Cummens,* 143 Iowa 148; *Harris v. Bigley,* supra.

12. Appellants further contend that plaintiffs did not show, on the trial in the district court, that a new trial would result in a different judgment from the one rendered when the will was denied probate, and that, therefore, the trial court erred in vacating the judgment. They claim it is necessary to so show, and cite Code Sections 4094 and

4096; *Reints v. Engle*, 130 Iowa 726; *Johnson, Lane & Co. v. Nash-Wright Co.*, 121 Iowa 173; *Andres & Co. v. Schlueter*, 140 Iowa 389.

There may be force in this contention, but since we have held that fraud, and other matters relied upon by plaintiffs, have not been shown, it is unnecessary to discuss this feature.

13. It is claimed by plaintiffs that an injustice was done the minors in setting aside the will; but no more injustice was done them than was done the four daughters of deceased, who filed objections, and are not complaining. If the first will is not probated, the mother of the minors will inherit a sum substantially equal to the property given to them under the trust provision of the last will. If the first will is probated, the estate will go to the grandmother of the minors, and from her, doubtless, to the four daughters, including the mother of these minors. We are impressed with the thought that ultimately these minors will fare as well, and perhaps better, than under the will in question. Of course, this is not the question upon which the case must be and is decided, but the thought is suggested by appellees' argument.

We reach the conclusion that the trial court erred in setting aside the judgment and order which denied the probate of the will.—*Reversed and remanded.*

WEAVER, C. J., LADD, EVANS, and SALINGER, JJ., concur.