CLAUDE M. SNYDER, Appellant, v. RUTH ROBERTS. SNYDER, Appellee.

No. 47340.

(Reported in 35 N. W. 2d 32)

DECEMBER 14, 1948.

REHEARING DENIED FEBRUARY 11, 1949.

240

Edmund Scarpino and H. W. Hanson, both of Des Moines, for appellant.

J. R. McManus, of Des Moines, for appellee.

MANTZ, J.—This appeal raises the question as to the right of the district court of Polk County, Iowa, to set aside a decree of divorce granted therein to Claude M. Snyder on February 15, 1947. That court held on November 7, 1947, that the above decree should be vacated and set aside, principally for the reason that in making said decree the court lacked jurisdiction and that in procuring the same fraud had been practiced upon the court and the defendant. Plaintiff appeals.

The original decree of divorce and the one vacating same were made by the Honorable Loy Ladd, District Judge.

I. The plaintiff, Claude M. Snyder, resided in Des Moines, Iowa, with his parents for a number of years prior to January 1, 1935. In 1934, at the age of twenty, he enlisted in the Navy and on January 1, 1935 left for duty at the naval base at San Diego, California. His enlistment expired December 28, 1937. He then went to Los Angeles, California, where he worked in private employment for something over three years. On March 8, 1941, he married appellee in San Francisco, California. She was a resident of Los Angeles and never at any time lived in Iowa. About January 1941, appellant again joined the Navy and never returned to Iowa. On January 22, 1947, appellant, as plaintiff, petitioned the district court of Polk County, Iowa, for a divorce, alleging that he was a resident of Iowa; that the action was brought in good faith; that without fault on his part the defendant, appellee, had wilfully deserted him for a period of more than the two years last past without cause. His wife accepted notice of suit. Neither plaintiff nor defendant

appeared on February 15, 1947, when the case came on for trial. Plaintiff's witnesses were his mother and sister. On the same day a decree of divorce was granted to plaintiff based upon the allegations of his petition. On August 22, 1947, defendant filed a petition asking that the decree of divorce granted plaintiff on February 15, 1947 be set aside, alleging that the court was without jurisdiction to enter the same in that plaintiff was not then and had not been for a number of years a resident of Polk County, Iowa; that defendant had never deserted plaintiff and that her acceptance of service of the original notice had been secured and was the result of extrinsic fraud practiced upon her by the plaintiff; that the decree was the result of perjured testimony of witnesses for plaintiff and that a fraud had been practiced upon the court. The plaintiff-appellant specifically denied the allegations of appellee's petition to vacate the divorce decree and alleged that the matters therein set forth had been adjudicated; that the original notice was had after advice of counsel and after a discussion with appellant, and further, that no grounds exist, or are alleged, upon which a new trial could be granted herein; further, that defendant was estopped to bring suit by laches on her part. On November 7, 1947, the court filed a detailed finding of fact, followed by decree setting aside and vacating said decree of divorce.

II. The petition to set aside and vacate, above referred to, was bottomed on fraud depriving the court of jurisdiction in that appellant was not a resident of the state of Iowa as required by statute, and she seeks advantage of Rules 252 and 253, Rules of Civil Procedure. These rules provide that a final judgment may be vacated or a new trial granted for fraud practiced in obtaining the same.

Chapter 598, Code of 1946, deals with divorces. Section 598.1 is as follows: "The district court in the county where either party resides has jurisdiction of the subject matter of this chapter."

In section 598.3, it is provided that a plaintiff must state in his petition that he has been for the last year a resident of the state and that such residence has been in good faith and not for the purposes of obtaining a divorce only.

Section 598.6 provides that "If the averments as to residence are not fully proved, the hearing shall proceed no further, and the action be dismissed by the court."

It is settled in this state that the issue as to whether or not the court acquired jurisdiction to entertain the suit may be raised by motion of the defendant to vacate the decree: Girdey v. Girdey, 213 Iowa 1, 238 N. W. 432; Williamson v. Williamson, 179 Iowa 489, 161 N. W. 482; Beeman v. Kitzman, 124 Iowa 86, 99 N. W. 171; Spencer v. Berns, 114 Iowa 126, 86 N. W. 209.

The question of the residence of a plaintiff in a divorce case has been before this court many times. Smith v. Smith, 4 (Greene) Iowa 266; Hinds v. Hinds, 1 (Clarke) Iowa 36; Williamson v. Williamson, supra; Beeman v. Kitzman, supra; Whitcomb v. Whitcomb, 46 Iowa 437; Lawrence v. Nelson, 113 Iowa 277, 85 N. W. 84, 57 L. R. A. 583.

In the above-cited case of Hinds v. Hinds there was an elaborate discussion of the residence requirements of a divorce decree and the rule there laid down has been followed in this court. In Smith v. Smith, supra, this court held that the requirements of the statute relating to divorce should be strictly construed.

Regarding the matter of residence, we quote from the case of Girdey v. Girdey, supra, at page 4 of 213 Iowa, page 434 of 238 N. W.:

"From these cases it follows that the residence must be an actual residence as distinguished from a temporary abiding place, and further than this, it must not be a residence solely for the purpose of procuring a divorce only. In Hinds v. Hinds, supra, it was held that a legal residence, not an actual residing alone, but such a residence as that when a man leaves it temporarily on business, he has an intention of returning and which, when he has returned, becomes, and is, *de facto* and *de jure*, his domicile."

The substance of the claim made by appellee in her petition to set aside the divorce decree of February 15, 1947, among other things, is that fraud was perpetrated upon the

court in that the appellant was not a bona fide resident of the state of Iowa as required by the statute (section 598.3, Code of 1946). This charge of fraud necessarily carries with it the burden on appellee to sustain the same by evidence to satisfy the court that such fraud has been perpetrated. The presumption in the first instance is that honesty prevails in all these matters and when fraud is charged it casts the burden upon the party asserting the same. In re Estate of Kempthorne, 188 Iowa 70, 175 N. W. 857; Girdey v. Girdey, supra.

With these rules as a guide we will consider the evidence. The district court held that there was ample evidence to warrant the finding that fraud had been perpetrated upon the court and that appellant at the time of the filing of his petition and for years prior thereto had not been a bona fide resident of Iowa. We concur in such holding.

There are conflicts in the evidence. Such have arisen in connection with the testimony given by the appellant and appellee. To a very considerable extent there is involved the credibility of each as a witness. At the time the divorce was granted on February 15, 1947, appellant did not appear or give testimony by deposition. His mother, Vera Snyder, sometimes referred to as Vera Green, gave testimony on behalf of appellant. Her testimony given on February 15, 1947 reveals clearly that she testified largely from information given her in letters from appellant. She stated that he had been a resident of Des Moines all his life. "He has been a resident of Polk county since that time [coming to Iowa from Missouri when four years old] until he joined the navy, and is still a resident, never had any other address." She was a witness for appellant on the hearing to set aside the divorce decree. We quote further from her testimony in the hearing in February 1947. "They haven't lived together since 1942. I know that as a matter of fact. Exhibit 'C' is a letter from Claude, my son, to me. The date is September 6, 1945. Where he states, 'I have always declared Des Moines, Iowa, as my home', that is correct. 'And still fully intend to return there after retirement from the naval service.'" As a matter of fact, Exhibit C was a letter from appellant to his attorney, Edmund Scarpino, and bears the date of Septem-

ber 6, 1945. The mother stated in the last hearing that appellant had been in the Navy eleven years; that he had not been back to Des Moines since 1935; that prior to the trial she had not met appellee. She further stated: "I think the testimony I gave was based on that one letter. I got it right after they returned from Pearl Harbor, I believe it was in 1942."·

Vera Snyder, mother of appellant, speaking at the last hearing of appellant and appellee, said: "He and his wife were married in California on the 8th day of March, 1941. They have been separated since 1942, April 12, I believe, 1942, since they were at Pearl Harbor." She claims that appellant is a resident of Des Moines, Iowa, and relies to a large extent upon letters from him; also that at times official mail came to her. Then she speaks from information which she got from Exhibit A, being an instrument required by the Navy Department when one in service contemplates divorce. The instrument was entitled "Obverse." "Information for Divorce" made out, signed and sworn to by appellant on August 22, 1945. Therein appellant gave his home address as 1212 Searle Street, Des Moines, and other information; name of spouse, Ruth Roberts Snyder; when and where married, March 8, 1941, at San Francisco, and grounds for divorce: "incompatibility, mental cruelty, aggravation, and flirtation with other men." Under the head "Additional Pertinent Data" we find: "With my present and past position of being in the Navy and having to be constantly separated a divorce would be in due regard for both of our morals and welfare." His mother stated in the first hearing that some of her testimony then given was derived from a letter (Exhibit C) from her son. The record shows that Exhibit C is a letter from appellant to his attorney, dated September 6, 1945, and discussed a possible future divorce suit with appellee. Both of these Exhibits A and C were introduced and offered subject to appellee's objection that they were incompetent and self-serving and made out over a year prior to the filing of the divorce suit. We think the objection was good. The record shows that about all the mother knew of the residence of appellant was that he had written her that he was claiming Des Moines

as his home. It is rather significant that such claims were made after appellant began to contemplate a divorce.

When appellant enlisted in the Navy at Des Moines, he gave his residence as 1212 Searle Street. He was then single and but twenty years of age. During the time he was in the service various official papers—orders, directions, leaves of absence, pay allotments, insurance, and others of a like nature bore that address. Appellant claims that such established his residence as being Des Moines, Iowa. He admits that he lived at various places in California and had residence addresses there but designates them as "temporary." He entered naval service January 1, 1935. He left that service on December 28, 1937. He went to Los Angeles and worked for a furniture company a few months. He worked approximately three years for the American Building & Maintenance Company of Los Angeles. That work took him about the country. He registered in California as a voter in the election of 1940. Therein, under oath, appellant gave his address as 1357 Valencia Street, and gave his occupation as an elevator operator. He joined the Woodmen of the World in Los Angeles and gave his residence as 314 S. Fremont Street. He registered in that state under the Social Security Law. He re-entered the naval service January 28, 1941. He was sent to Pearl Harbor and was there with Ruth when the attack was made by the Japs. They returned to California in 1942 and for a number of years following his return his duties took him to various parts of the country. At times appellant was on extensive ship trips in both the Pacific and Atlantic zones—doing convoy duty—attending training schools—missions to various places at home and abroad, etc. While on duty he went to Charleston, Columbia, various places in Florida, Yorktown, Virginia, Washington, New York, and places in New England. In many of these places Ruth was with him. He sent for her at many of these places. Sometimes they traveled by auto, at other times by ship or train. There is evidence that on these trips they stopped at hotels and tourist courts and that at such places, in registering, appellant gave his home as Los Angeles, California. One of these auto trips taken by appellant and appellee covered a distance of about 2000 miles. Appellee

testified that appellant invariably gave Los Angeles or California as his home. To such evidence he gave uncertain and evasive denials, such as "I might have—I wouldn't say—I don't remember." Appellee testified that on one such occasion she and appellant attended church in Alabama. We quote:

"My husband was in uniform, the only man in the church in uniform, and the minister said, 'I see we have a Navy man with us. Will you please stand, sir?' He stood up and [the minister] said, 'Where are you from?' And it was in a Baptist Church in Prichard, Alabama, and he said, 'We are from Los Angeles.'" Appellee further stated: "He [appellant] certainly has stated in my presence how he felt about living in the state of Iowa. He said 'When I was old enough to leave Iowa I got out. It is a lousy climate, you freeze in winter and you roast in summer, and I wouldn't go back there to live if they gave me the whole damn state.'"

We fail to find in the record a specific denial of the matters above set forth.

We hold, as did the trial court, that the evidence shows that neither appellant nor appellee was a resident of Iowa when appellant filed his petition for a divorce. Such being the case, the court had no jurisdiction to render the divorce decree.

III. Appellant argues that appellee is estopped to have the decree of February 1947 set aside in that she has been guilty of laches. We are unable to agree with him. The record shows that appellee acted promptly as soon as she was advised that appellant had secured a divorce. She sought counsel in Charleston and followed his advice. She investigated and found that appellant was then living with Irene and that she was claiming to be his wife. Her mother also confirmed this information; appellant admitted it and when told by appellee that she would at once proceed to have the decree set aside, appellant told her that she would have to go to Des Moines to do so; that if she did he would fight it and deny everything she testified to and that he would "lie like hell." It must be kept in mind that after the divorce had been granted, no further allotments were made to appellee and that all of her available funds had been turned

over to appellant. To make the investigation and to come to Iowa to start suit required some time.

There is evidence in the record from which it can be inferred that appellant was married to Irene Patrick before granted a divorce in 1947.

Appellant argues that the rights of others are prejudiced. Another wife—happy relations—foster children—added obligations.

Irene and her mother had information that appellant was a married man when Irene was keeping company with him. Irene was not an unsophisticated person when she met him. She had been married to a Mr. Faulk in May 1930. She had four children, the oldest a son, eighteen; she divorced her husband in March 1945 after she had met appellant. She testified: "Prior to March 1935 I had lived with Mr. Faulk eleven years; my baby was nine months old."

There is nothing in the record which would justify or warrant the claim that appellee was guilty of laches. See Whitcomb v. Whitcomb, supra; Rush v. Rush, 48 Iowa 701; Williamson v. Williamson, supra; McNair v. Sockriter, 199 Iowa 1176, 201 N. W. 102; Lutton v. Steng, 208 Iowa 1379, 227 N. W. 414; McKeon v. City of Council Bluffs, 206 Iowa 556, 221 N. W. 351, 62 A. L. R. 1006.

There is in the record evidence from which it can be inferred that appellant and Irene, before the divorce was granted in February 1947, were living together as a married couple, or under conditions from which such status could be inferred. We have not been able to find in the record the date of their marriage. Both were witnesses but we do not find them giving that date. This omission strikes us as rather significant.

In conclusion we hold that the entire record fully supports the ruling of the trial court. Its decree is right and is affirmed.— Affirmed.

All JUSTICES concur.