THOMAS HOVORKA ET AL. v. JOHN HAVLIK ET AL.

FILED FEBRUARY 17, 1903. No. 12,456.

1. Husband: WIFE: TRANSFER: BURDEN OF PROOF. The burden of proof is upon the husband or those claiming under him to show that a gratuitous transfer to him from his wife was made freely and deliberately, and that the transaction was fair and proper.

2. Administrator's Sale: EXECUTORY CONTRACT: REAL ESTATE. Under our probate system an administrator can not sell the interest of the estate in an executory contract for the purchase of lands except as real estate, and after a license obtained from the court therefor.

3. Husband: WIFE: ADVERSE POSSESSION. The husband, while living with his wife, can not gain title to her land by adverse possession.

4. Deed: DURESS: LIMITATION. A deed for the conveyance of land, if obtained by duress, may be avoided by the entry of the grantor or his heirs within the statutory period of limitation.

ERROR to the district court for Saline county: GEORGE W. STUBBS, DISTRICT JUDGE. _Affirmed._

*Archibald S. Sands, Leonard W. Colby* and *E. S. Abbott,* for plaintiffs in error.

*Fayette I. Foss, Bert Kohout, R. D. Brown* and *William G. Hastings, contra.*

DUFFIE, C.

At the date of his death—the date of which does not clearly appear in the record—John Havlik resided on a homestead claim consisting of the northwest quarter of section 15, township 8, range 4 east of the sixth P. M., in Saline county, Nebraska. He also held a contract from the state of Nebraska for the purchase of twenty acres of school land, being the east half of the southeast quarter of the northeast quarter of section 16, township 8 north, of range 4 east of the sixth P. M. He left surviving him a widow and three children, one of whom is the defendant herein. After his death his widow proved up on the homestead claim, and a patent for the land was duly issued to her under the provisions of section 2291 of the Revised Statutes of the United States. Some time after the decease of John Havlik, his widow married one Frank David, and on July 3, 1884, she made a deed of the northwest quarter of section 15 to one Frank Nedela, and on the same day Frank Nedela conveyed said premises to Frank David. There is evidence in the record that these deeds were made on the agreement that David should pay $800 to each of the three children of John Havlik, and $1,200 to the wife in case they should not continue to live together. Prior to this time the widow of John Havlik (then Mrs. David) assigned the school-land contract held by her deceased husband to Frank David, and on March 22, 1879, he procured a patent from the state for the land therein described. Frank David departed this life on the 23d day of April, 1891, and at the date of his death held the legal title to the homestead quarter section and to the twenty

acres of school land above described. After his death Mrs.
David continued to reside upon the homestead until her
death, which occurred August 13, 1891. She left a will
by which she devised all her real and personal property to
John Havlik, a son by her first husband, the homestead
and school land being specifically described in her will as
the real property conveyed thereby. Since the death of
his mother, John Havlik has been in possession of the
above described property, claiming title thereto under his
mother's will; and some time in the year 1900 this action
was commenced by a part of the heirs of Frank David and
the grantees of the other of those heirs to recover posses-
sion of said lands. A verdict was returned for the de-
fendants, and the plaintiffs have brought error to this
court. The defense interposed was that Frank David had
procured title to the homestead property from his wife
by coercion and duress, and that her assignment of the
school-land contract, being made without a license from
the court, was void.

The seventh and eighth instructions of the court were
excepted to by the plaintiffs in error, who now insist that
they were erroneous. They are as follows:

"7th. If you find from the evidence, gentlemen, that
Frank David, deceased, became the husband of Mary
David, and while living with her as her husband she at
his request conveyed the northwest quarter of section 15
to Frank Nedela, who, by previous arrangement and with-
out any consideration paid by said Frank David, conveyed
said quarter section to Frank David, such transaction will
be presumed fraudulent and void and to have been made
by said Mary David under duress by her husband and
against her will unless it appears from the evidence that
the transaction was fair and just and understood by Mary
David and entered into by her voluntarily.

"8th. If you find, gentlemen, that the deed of Mary
David to Frank Nedela, bearing date of July 3, 1884,
which has been shown here in evidence, was made by her
because of threats made against her by her husband, and

because of threats on his part to leave her, and of threats against her children, and was without consideration on the part of the said David, but was made solely for his benefit, then such deed is void as against the said Mary David, and neither Frank David nor any one claiming through him can base any claim of title thereon."

The law is well settled that the burden is upon the husband to show that a gratuitous transfer to him from his wife was made freely, and that the transaction was fair and proper. *Hall v. Otterson,* 52 N. J. Eq. 522; *Wales v. Newbould,* 9 Mich. 45; *Penniman v. Perce,* 9 Mich. 509; *Darlington's Appeal,* 86 Pa. St. 512, 27 Am. Rep. 726; *Boyd v. De La Montagnie,* 73 N. Y. 498, 29 Am. Rep. 197.

The jury was told in the seventh instruction that if the conveyance to David was without consideration, the presumption obtained that it was void; while the eighth instruction informed the jury that if the transfer to David was induced by threats made against Mary David and her children, and without consideration, then the conveyance so obtained was void. As we have seen, the seventh instruction announced a well-established rule placing the burden on the husband, or those claiming through him, to show that a gratuitous transfer from his wife was made freely and without any compulsion; that the transaction was a fair one, and while there is evidence in the record tending to show that David did pay a consideration for the conveyance to him, still this was a question for the jury to determine, and one which was properly submitted for its determination. The eighth instruction was more favorable to the plaintiffs in error than authorized by legal rules, in requiring a want of consideration for the transfer, in addition to duress in obtaining it, to avoid the conveyance. No one can be required to part with his property against his will, and no consideration, however great or valuable, will validate a deed obtained by coercion and duress. The plaintiffs in error have no cause to complain of these instructions.

Complaint is also made of the ninth instruction, given

6

as follows: "You are further instructed, gentlemen, that under the laws of the state of Nebraska when one dies possessed of a contract for the purchase of land, his interest in such land under said contract may be sold in the same manner as if he had died seized of the land itself, and in no other way." It is insisted that a contract for the purchase of school lands from the state is personal property, the title to which passes to the administrator, and that he has the right to sell it the same as other personal property of the deceased. It is said that at common law the executor or administrator has an absolute power of disposition of the personal estate of deceased, by sale or otherwise as he sees fit; and that while the statutes of this state provide for an application by an administrator to the probate court for a license to sell personal property of an estate, the statutory provisions are not exclusive, and the administrator may still sell without an order of the probate court making himself and his bondsmen liable for the value of the property if the sale is for less than its true value. We might admit the correctness of this claim so far as it relates to personal property pure and simple, but as a decision of the case does not, in our opinion, depend upon whether the administrator may sell and pass good title to such property without a license from the court, we refrain from expressing an opinion on the question. Sections 94 and 95 of chapter 23 of our statute (Annotated Statutes, 4968, 4969) provide:

"Sec. 94. If a deceased person, at the time of his death, was possessed of a contract for the purchase of land, his interest in such land and under such contract may be sold, on the application of his executor or administrator, in the same manner as if he had died seized of such land, and the same proceedings may be had for that purpose as are prescribed in this subdivision in respect to lands of which he died seized, except as hereinafter provided.

"Sec. 95. Such sale shall be made subject to all payments that may thereafter become due on such contracts, and if there be any such payments thereafter to become

due, such sale shall not be confirmed by the judge of the district court until the purchaser shall execute a bond to the executor or administrator for the benefit and indemnity of the person entitled to the interest of the deceased in the land so contracted for, in double the whole amount of payments thereafter to become due on such contract, with such sureties as the judge of the district court shall approve."

This statute, as we understand, was borrowed from the state of Michigan, and had as early as 1863 received a construction by the supreme court of that state, by which it was held that "under our probate system, an administrator can not sell the interest of the estate in an executory contract for the purchase of lands, except as real estate and after license." *Baxter v. Robinson,* 11 Mich. 520. But even in the absence of this statute and of its construction by the supreme court of Michigan, we can not believe that it was the intention of the legislature that valuable landed estates, held by the decedent under a contract of purchase, should pass to the administrator, to be disposed of by him in the same manner as the goods and chattels coming to his possession. There are numerous cases where valuable farms and other property are held under a contract of purchase. The decedent and his family may have lived upon the property for years; the purchase price may have been mostly paid; and it would be so unusual and unjust to allow the administrator to claim title to this property, and a right to dispose of it as personalty coming to his hands without a showing that it was necessary in the settlement of the estate, that a statute authorizing such a procedure should be the only authority of this court to declare it to be the law.

The plaintiffs in error requested an instruction to the effect that Frank David's title to the school land was based upon the deed from the state of Nebraska, which deed was based upon an assignment of a sale contract issued by the state to Havlik, deceased, and assigned by his administratrix to said David, and that if the jury found

that David entered into the exclusive, open, notorious and adverse possession of said premises under said ·deed, and retained and occupied the same for ten years or more continuously thereafter, that it was then wholly ·immaterial as to the form or manner of making an execution of the assignment or the existence of the same, and that such continued possession would establish a legal and sufficient title in the deceased. The refusal of this instruction is assigned as error. We do not think that under· the circumstances error can be predicated upon the refusal of the court to give this instruction. The evidence is undisputed that the possession of this school land by Frank David was a joint possession with his wife. He had no greater possession than did she, and we do not think that where the husband and wife reside together, and are jointly in possession, one can acquire title as against the other by prescription. ·

The claim that the defendant's right to assert title to the homestead tract is barred by the statute, can not be sustained. The deed to David was made in 1884. He died in 1891. Even if his possession had ·been exclusive, the statutory period of. ten years had not expired at his death. Mrs. David attempted to convey this land by her will, made after the death of David; and John Havlik, the defendant, took possession under his claim as devisee on the death of his mother—all in 1891. If the deed to David was obtained by duress, it may be avoided by the entry by the grantor or her heirs within the statutory ·period. *Inhabitants of Worcester v. Eaton,* 13 Mass. 371,. 7 Am. Dec. 155. The evidence in this case satisfies us, as it did the jury, that the transfer of title from Mrs. David to her husband was made under coercion and duress. · The evidence of any consideration having been paid· is not of the most satisfactory character, and while we would not be inclined to interfere with a finding of the jury that a. consideration was paid, we are entirely satisfied with the verdict returned, which, under the instructions, must have been based on a finding that David paid. nothing for the

conveyance made to him, or that such conveyance was coerced from his wife, or both. We find no error in the record of which the plaintiffs in error can complain. We are satisfied with the verdict of the jury, and recommend an affirmance of the judgment.

AMES and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.