KEMRON E. MESSENGER, Appellant, v. EMMA J. MESSENGER, Appellee.

**PLEADING:** Voluntary Issues. Parties are bound by material, non-paper issues, voluntarily litigated by them.

**DIVORCE:** Residence—Sufficiency. Residence is not wholly a matter of expressed intention. Acts and conduct must harmonize with intention. Evidence held sufficient to justify the court in setting aside a decree, on the grounds of want of residence and good faith.

**APPEAL AND ERROR:** Abstract—Questions and Answers. Questions and answers may be of such a nature as to justify a literal copying of them into the abstract, in order to properly scrutinize them.

*Appeal from Polk District Court.—J. E. MEYER, Judge.*

FEBRUARY 16, 1920.

APPEAL by the plaintiff from an order of the district court setting aside a decree of divorce previously obtained by him.—*Affirmed.*

*Henry & Henry,* for appellant.

*Carr, Carr & Cox,* for appellee.

EVANS, J.—Plaintiff obtained the decree of divorce on March 6, 1918, upon service by publication. On May 22, 1918, the defendant wife appeared by filing a petition in the case, asking that such decree be set aside on the ground of fraud in obtaining the same. With her petition the defendant filed her answer, setting up a complete defense to the plaintiff's original petition. The trial court sustained the petition, and set aside the decree.

The reason assigned by the court for setting aside the decree was that such decree had been entered without juris-

diction, in that the plaintiff was not a resident of Iowa at the time he brought his suit, or at the time of obtaining the decree.

Two grounds of reversal are pressed upon our attention by appellant:

(1) That there was no allegation in the application to set aside the decree which denied or challenged the alleged residence of plaintiff in Iowa, and that the court erred in sustaining the petition on a ground not presented therein.

(2) That there was jurisdiction to enter such decree, in that the plaintiff was, in fact, a resident of the state, as disclosed by the evidence at the hearing, and that the court erred in its finding otherwise.

I.   As to the pleadings, it is to be said that the petition to set aside the decree and to grant a new trial did not, in terms, allege that the plaintiff was not a resident of the state.   With her petition, however, the defendant filed her answer to plaintiff's petition for divorce.   This answer presented complete defenses to such petition.   One of these defenses was that the plaintiff was not, and never had been, a resident of the city of Des Moines.   She denied, also, that he had brought the action in good faith.

In support of her application to set aside the decree, it was necessary for the defendant to show *prima facie* a good defense.   The application itself was predicated, in terms, upon the ground of fraud.   It charged broadly that the decree of divorce had been fraudulently obtained.

Though we assume that evidence on the question of plaintiff's residence was not admissible at the hearing of the application, for want of issue tendered therein on such question, yet no objection to such evidence was made.   On the contrary, the plaintiff, in the introduction of testimony, went into the question voluntarily and fully.   Furthermore, the record discloses that, some time before the defendant's

application was reached for trial, the plaintiff filed in the cause the following motion:

"Now comes the plaintiff, Kemron E. Messenger, and by his counsel, and moves the court to set this case down for hearing at some definite day during this term of court, and that said cause be heard upon affidavits or oral testimony, as the court may determine, upon the following grounds:

"1. The plaintiff is at present engaged in business at the city of Lincoln, in the state of Nebraska, and his counsel is unable to proceed with the trial of this case at this time without the presence of his client.

"2. The issue before the court is one of fact, and cannot be met without testimony.

"3. The defendant's counsel has informed the plaintiff's counsel that this court has no jurisdiction in this case, as the plaintiff was a nonresident of the state of Iowa at the time the decree was granted in this case.

"4. The plaintiff's counsel cannot safely proceed with the trial of this case at this time, without the presence of his client; for the client alone knows his place of residence.

"5. If the hearing of this case is passed until some day of the following week, the plaintiff's presence can be secured."

Pursuant to this motion, plaintiff was given opportunity to be present at the hearing, and he was present. The evidence on the question of residence was principally that of plaintiff himself, as a witness, under the examination of his own counsel. The only other witnesses testifying on such question were those produced by the plaintiff in his own behalf.

Regardless, therefore, of the allegations of defendant's application, or the absence of allegation therein, the record clearly discloses that the parties tried the question of residence as a volunteer issue, without raising any question as

to the scope of the pleadings or as to the admissibility of the testimony. This objection made here was not made in any form in the trial court. The objection, therefore, comes too late.

II. The evidence in the case bearing upon the question of plaintiff's residence in the state bears also on the question of his good faith in claiming such residence, and in predicating his action for divorce thereon.

2. DIVORCE: residence: sufficiency.

The parties were married in 1895. They lived together as husband and wife until April 4, 1909. Their home at that time was near Denver, Colorado. It is averred by plaintiff that defendant deserted him at that time. It is averred by defendant that the plaintiff deserted her at that time. Both parties charged cruel and inhuman treatment. The fruit of the marriage was a little girl, seven years of age, and a little son, deceased. After the separation, the defendant continued to live in the same home, and so continued ever since. The plaintiff took up a business that has taken him into many states. There is a sense in which he has had no abiding place anywhere. For the last five years, he had been in the employ of Wood Brothers Thresher Company, and went wherever he was sent by his employers. On December 28, 1916, he became sales manager, with headquarters at Des Moines. His work, however, kept him out of the city on the road, most of his time. While in Des Moines, he lived at the Elliott Hotel. For about three years prior, he had kept a trunk at this hotel. We infer that he had used a room there whenever he was in the city. For the last two years prior to December 28, 1916, he had spent most of his time in Minnesota, and had claimed a residence and voted there. It was during this period of time that he had kept a trunk at the Elliott Hotel.

During the entire period of separation, he had supported his wife and child by regular remittances. He had at all

times maintained his bank account at Denver. His remittances to his wife were always made by check on the Denver bank. In January, 1915, he made her a brief visit. In October, 1917, while in Denver, he phoned the residence, and made an appointment with his daughter, pursuant to which she visited him down town. On October 30, 1917, he wrote his wife the following letter:

. "Des Moines, Iowa, Oct. 30th, 1917.

"Jean: About three years ago we had some correspondence on the question of a divorce. Nothing came of the matter at that time, however, I thought and still think it is the proper thing to do. Now it is a question of which one brings the suit. If you prefer to be the plaintiff in this matter, I will not resist except as to the question of alimony; and, that can I hope be arranged mutually. But it must be understood that the amount will not be what I have been sending you in time past. After January 1st, I will be out of a job, as my contract with Wood Bros. expires Dec. 31st, and my health will not permit me to continue the work. It is my understanding that Wood Bros. have the man selected to take my place. I gave them notice on July 4th, that I would not continue after my present contract expired. This matter does not call for any bitterness on the part of either of us. It is the sensible thing to do. We have had bitterness enough in time past. Think the matter over and write me.

"Yours truly, K. E. Messenger."

This letter was answered by the wife, with the following notation thereon:

"If you care to take action in this matter, better refer it to your attorney."

On November 30, 1917, he left Des Moines for Lincoln, Nebraska, to take charge of his firm's business there. According to his testimony, the purpose of his going was at first temporary, but afterwards became permanent. He has

continued to live at Lincoln since that time. While staying at Lincoln, he began this action for divorce, on January 2, 1918. He averred, in substance, that he had resided in the city of Des Moines for one year last past, after deducting all absences therefrom. Without doubt, he intentionally withheld from his wife all knowledge of the proceeding. After obtaining the decree, he promptly wrote to her, advising her of his success in that regard, and, in effect, that her dependence upon him was at an end. The decree obtained awarded no alimony. It is alleged in the answer that the plaintiff had property to the value of $75,-000. He was receiving a salary of $3,000. There is no suggestion in the letter to his wife that he had changed his residence from Colorado. So far as appears from the record, he was personally present in Colorado as often as he was in any state. By his letter, he asked that the question of alimony "be arranged mutually."

The letter as a whole clearly. implied an assurance that whatever he did in the matter of a divorce should be done openly and honorably, and not clandestinely and dishonorably. If vigilant prudence required the defendant to watch the docket of Polk County, while plaintiff lived in Des Moines, the letter of plaintiff was calculated to relieve such tension, and to allay watchfulness. Still less was there any prudent reason for the defendant to watch the Polk County dockets after the plaintiff had removed to Lincoln; and yet the plaintiff had left Des Moines, never, in fact, to return, more than 30 days before he began his suit. The total period of his stay in Des Moines was 11 months, without counting his many absences therefrom. The next day after he obtained his decree, his trunk was shipped to Lincoln.

It is to be conceded that the question of acquiring a residence is, to a large extent, a question of intention on the part of the alleged resident. But such intention must be

bona fide. Only the plaintiff himself can testify directly to such intention. The courts, too, are inclined to deal liberally with the claimant of a residence, on the theory that he can have but one, and is entitled to make his own choice. But this does not eliminate the question of the good faith of his intention. Where, as here, it becomes highly advantageous to a claimant temporarily to feign an intention to become a resident for only a brief time, in order to accomplish other ends, his claim of intention will be scrutinized and weighed like any other evidence, in the light of his conduct and all the circumstances surrounding it.

We reach the conclusion that the evidence in this record justified the finding of the trial court on the question of residence.

III. The appellant has filed a motion to strike the amended abstract of the appellee, on the ground that it has added nothing material to the record. The examination of the plaintiff as a witness is set forth in full by question and answer in the amended abstract. The matters inquired about bore almost wholly upon the question of motive and intent on the part of the plaintiff. We think that the setting forth of his evidence by question and answer was an aid to the proper scrutiny of it, and, therefore, that the filing of the amended abstract is not subject to complaint. The order of the trial court will be—*Affirmed.*

3. APPEAL AND ERROR: ab-stract: questions and answers.

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.