A. R. PETERSEN, Appellee, v. LENA O. PETERSEN, Appellant.

No. 43441.

JUNE 19, 1936.

Sinkler & Brekke, Ira W. Jones, and L. R. Boomhower, for appellant.

Edward R. Boyle, for appellee.

HAMILTON, J.—The plaintiff, who was 56 years of age and had been chief of police in the town of Clear Lake, Iowa, for

eleven years, and the defendant, who was 47 years of age, or thereabouts, were united in marriage on April 20, 1934. Each of them had been previously married. Plaintiff's former wife was dead. The defendant had been the wife of a doctor from whom she was divorced. She had a high school education and had received some nurse's training. Plaintiff had accumulated considerable property, while the defendant had nothing but a few household goods and her personal belongings. She had a daughter in school, and the plaintiff had a grown daughter who was living in the home and was a stenographer in a local office. There is nothing in the record to detract from the good character or standing of either of these parties. There was no evidence of discord. They each say that the other was kind and considerate and no overt act of misconduct is charged against the other. She would have liked it better had he laid aside his armor as a policeman when off duty and had been more loquacious while in and about the house. But there is no claim of any threat or purposeful intimidation because of the firearms which he habitually carried in the holster strapped to his person, or that his long periods of communion with himself were for the purpose of annoying her. And while in his petition for divorce the alleged ground is cruel and inhuman treatment, the allegation is in the form of a legal conclusion, unsupported by any fact allegations, and from his own testimony we gather that the one and only thing that ruffled the waters on the sea of matrimony and kept his cup of connubial bliss from running over was his wife's failure, as he claims, to meet his requirements and expectations in the performance of her marital duty in satisfying the carnal man. No reason or explanation for her negative conduct in this respect is disclosed by the record. While he admits that they had no discord or trouble over the matter, he claims in his testimony that they had at different times discussed the matter and that he had earnestly requested her on several occasions to be, as he termed it, "a wife to him"; that she persisted in her refusal and said that she could not. And he further contends that because of this matter, the question of divorce was talked over, and that they had agreed upon a divorce, and that in response to this agreement, he went to his attorney and had the papers prepared, took them to her while she was ailing and in bed (she had had several operations and was suffering from adhesions), and told her what they were and asked her to sign

them, and that she willingly affixed her signature thereto. He admits that she did not have her glasses, but he claims she read them. He then states that on the afternoon of the same day she went over to visit a friend in a neighboring town seven or eight miles distant, and that as she left he kissed her good-bye and she said to him: "You have been awfully good to me."

The original notice was in the usual form and required defendant to appear on or before the second day of the January, 1935, term of the court which commenced on the 7th day of January, 1935. Attached to this notice was the following:

"Acceptance of Service of Original Notice and Waiver of Time of Filing Petition.

"I, Lena O. Petersen, do hereby accept due, timely and legal service of the original notice in the foregoing entitled action for the January, A. D., 1935 Term of the District Court of Iowa, in and for Cerro Gordo County, in which A. R. Petersen is plaintiff, and Lena O. Petersen, who is myself, defendant. I do hereby acknowledge receipt of a copy of said original notice, together with a copy of plaintiff's petition, and I do hereby enter my appearance in said cause for the January, A. D., 1935, term of the District Court aforesaid, and I expressly waive the time of filing the petition herein, as provided by law, and consent that said petition may be filed at any time during the January, A. D., 1935, term of the District Court aforesaid, or any subsequent term, and I further waive the filing of an answer or any other pleading whatsoever, and I consent that the Court may hear this matter at any time during the January, A. D., 1935, Term of the District Court of Iowa, in and for Cerro Gordo County, or at any subsequent term.

"Dated this 27th day of March, A. D., 1935.

"[Signed] Lena O. Petersen, Defendant."

It will be observed that the paper bears date of March 27th, but it was actually signed on March 29, 1935. The petition for divorce was not yet on file but was, together with the notice and acceptance of service, filed on the 2nd of April following, and on the 4th day of April he obtained his decree of divorce by default for want of plea. At the same time that she signed the acceptance of service, she also signed a property stipulation, by which she was to have her household goods and wearing apparel, which already belonged to her, and relinquished all claim to

his property. This was never filed in the case and was not presented to the trial court, and so far as the record discloses, the trial court had no knowledge as to what property settlement had been made at the time he granted the decree.

Mrs. Petersen's version of what happened on this day is somewhat different. She said that she was ailing and had gone upstairs and was in bed when the plaintiff came in and told her that he had some papers which did not concern her, and asked her to sign them; that she understood that they related to a loan; that she had signed some papers shortly before in reference to a loan; that she did not have her glasses and could not read readily without her glasses; and that she did not read the papers, but took his word as to their contents. She said: "Mr. Petersen never talked about his business very much. If he wanted me to sign any papers he would come to me and tell me to do it. That was all there was to it, and I would sign. Mr. Petersen said when he brought the papers to my bedroom that they were in regard to a loan, and that it was nothing that would affect me, and asked me to sign. I took his word for it and signed. I did not ask Mr. Petersen to read them to me when I signed. I relied upon what he told me they were when I signed them." In reference to the divorce matters which he said had been talked over between them, she testified:

"I heard Mr. Petersen's testimony concerning the conversation with reference to my not being a wife and getting a divorce. I had no such talk or conversation with him. I tried every way that I knew how to be a good and dutiful wife to him at all times, and when I left that day it is true he kissed me.

"Q. Was there anything in leaving the home that day that indicated to you that there was any domestic discord in the home at all? A. No."

The court, under this record of the testimony of these two witnesses, parties to this suit, is confronted with the paradoxical situation of two apparently reputable persons flatly contradicting each other as to material facts perfectly obvious to both of them, and as to the truth of which there is and was in reality no basis for dispute. All any court can do under such circumstances is to test the weight and credibility of such testimony by its inherent incongruities and inconsistencies and probabilities or improbabilities, and, in keeping in mind the correct rule

upon whom the burden is cast in transactions of this character between husband and wife occupying a confidential relation, let the scales fall where they may.

The evidence shows that when she left, as she claims, to visit a friend in a neighboring town that day, she took nothing with her except an overnight bag and she had no change of clothing. This fact is not disputed. While she was at this friend's home she telephoned her husband that she would not be back at the time she had arranged to return, and it was while at this friend's home the next day after the divorce was granted that she read in the local paper of the granting of the divorce and this was the first knowledge she had. She is corroborated in this by her friend where she was visiting, who was a witness in this case and testified that she was a very close friend of Mrs. Petersen. She had come to her house for week-end visits a number of times during the years of their acquaintance. "She made no statement to me upon her arrival that she and her husband were separated or that they were separating. There was no talk or complaint by her of any trouble of any kind. When she read the notice in the paper she appeared stunned by the news and said she did not see how it could be possible." She immediately called up her sister in Minot, North Dakota, whose husband was a lawyer, and this lawyer arranged with counsel who are now representing the defendant, and this proceeding to set aside this default was instituted at once; the motion and petition having been filed on the 9th day of April following the granting of the decree on the 4th day of April.

It is undisputed that there was no one present during any of the time these papers were signed, or any talk between these parties was had; that the entire transaction was between this husband and wife in the secret confines of their own home. The plaintiff was possessed of property, the equity in which is valued at from eighteen to twenty thousand dollars. The defendant had nothing save her household goods. Under this agreement, which according to the husband's own testimony was entered into between himself and his wife, by which they *agreed upon a divorce* (which is not permissible), she signed up a paper by which she appeared to an action which was not then docketed, no petition having been filed. She waived time of filing petition and consented that said petition might be filed at any time during the January, 1935, term of the court or any subsequent term,

waived the filing of an answer or any other pleading whatsoever, and consented that the court might hear the case at any time during the January, 1935, term or any subsequent term. She had no advice of counsel or of any one, which fact the husband knew. He states himself that she did not have her glasses. It is undisputed that she is a woman 47 years of age or older, and she says she could not read the papers without her glasses. Under these circumstances, he did not read the papers to her, but according to her version, deceived her as to their contents. She signed an appearance containing a stipulation which permitted him at any time, without limitation, to file the petition and have the matter heard. He could go into court with this document and obtain a decree of divorce without alimony at any time the court was in session. She signed a stipulation relinquishing any right to any of his property.

It is inconceivable that defendant would thus strip herself of her home, her marital relationship, and any and all prospective interests in her husband's estate, and meekly submit to being cast out in a way and manner not unlike a savage chieftain in primitive days would oust his faithful squaw from his wigwam and take unto himself another of the younger and fairer maidens of the tribe. The fair, reasonable, and most probable inference is that she was either ignorant of her legal rights under the circumstances, or that she was deceived and misled by one in whom she had the absolute right to impose the greatest of trust and confidence. This is borne out by the fact that immediately upon talking to her brother-in-law who was an attorney, she forthwith began proceedings to set aside the decree. Under either theory, when the matter was called to the attention of the court, under the circumstances disclosed by the record in this case, the court without hesitation should have set the decree aside. Indeed, the court would have been justified in setting aside the decree on the plaintiff's own statement. Apparently the trial court and counsel for appellee were laboring under the erroneous impression that these parties at the time of the signing of these papers were occupying the status of antagonists where each would be expected to be upon guard, and have attempted to apply the rules of law to this case that would govern in cases where parties are dealing at arm's length, where no fiduciary or confidential relationship exists; and even on that theory the lower court in his findings expressed doubt about the

matter. This being true, in the light of the unconscionable advantage taken by the husband of his wife, between whom at the very time according to the undisputed facts there existed the most amicable feeling, as is evident from the undisputed fact that as she left his home on that afternoon he kissed her good-bye and she said to him, "You have been very good to me," it certainly cannot be the policy of the law that the wife, under such circumstances, in dealing with her husband in relation to matters as sacred as that of the marital relationship is bound at her peril to scrutinize every paper which .her husband requests her to sign and that she is not warranted in relying upon his statement. Under the circumstances disclosed by the record in this case where there is a fiduciary and confidential relationship of the highest known to the law, the court should subject the testimony to the utmost scrutiny, and the court should be abidingly satisfied from the testimony that the transaction was free from fraud and deceit, and that there was no unconscionable advantage taken of the wife by the husband in whom she had every right to put her trust and confidence.

"The most dominant of all relations is that of the husband over the wife. There are, of course, exceptional cases when the will of the woman may control. The relation is so close, the trust of the wife so absolute, her dependence so entire, it may be, her fear so abject, while the dominion of the husband is so complete, his influence so insidious yet so controlling, that equity regards all such transactions with a jealous care, and subjects them to the severest scrutiny. The greater the affection, the more submissive the dependence; the stronger the trust, the more liable is the wife to be subject to the control of the husband, and the more vigilant should the court be in protecting the weak." Hall v. Otterson, 52 N. J. Eq. 522, 28 A. 907, 909. As bearing on the attitude of the courts of this and other jurisdictions generally as to transactions between husband and wife, see Pruitt v. Gause, 193 Iowa 1354, 1358, 188 N. W. 798; Curtis v. Armagast, 158 Iowa 507, 520, 138 N. W. 873; Hovorka v. Havlik, 68 Neb. 14, 93 N. W. 990, 110 Am. St. Rep. 387; Wales v. Newbould, 9 Mich. 45; Penniman v. Perce, 9 Mich 509; Darlington's Appeal, 86 Pa. 512, 27 Am. Rep. 726; Boyd v. De La Montagnie, 73 N. Y. 498, 29 Am. Rep. 197.

Surely, if anywhere, the rule that "he who bargains in a

matter of advantage with a person placing confidence in him, is bound to show that a reasonable use has been made of that confidence" (Gibson v. Jeyes, 6 Ves. 266), and that the arrangement is fair and conscionable, should be applied in a case where a wife in the quiet of her home, in her own bedroom, is awakened from sleep by her liege lord, and, before her eyes are fairly open, without her glasses, without which she could not read the document, is handed a pen and told to sign her name to papers which enabled him, a man of means, in a divorce action based upon alleged grounds that are entirely without support in the record, to dispossess his wife, helpless and sick, with no property or means of making a living for herself and child, and permitted him to choose his time to present the matter to the court at the' January term or any other subsequent term without any further notice to her.

Without passing upon the sufficiency in its entirety of the above-styled "acceptance of service of original notice and waiver of time of filing petition," under any and all circumstances, to confer jurisdiction of the person, we do hold, under the circumstances disclosed by the record in this case, that there was sufficient irregularity in obtaining the decree, and sufficient proof of fraud, taking into account the confidential relationship that existed between the parties, and the unconscionable advantage acquired by the husband in obtaining his wife's signature, as to impel the court to set aside the decree. It therefore follows that the order of the trial court in refusing to set aside the decree is erroneous, and the cause is reversed and remanded for order and judgment in accordance with the opinion of this court. —Reversed and remanded.

Donegan, C. J., and Parsons, Anderson, Mitchell, and Stiger, JJ., concur.