ROWLAND A. MILLER, appellee, v. DAISY C. MILLER, appellant.

No. 47774.

(Reported in 46 N.W.2d 732)

708

John D. Beardsley, of Onawa, for appellant.

Underhill & Underhill, of Onawa, for appellee.

THOMPSON, J.—On November 9, 1948, plaintiff filed his petition in the district court of Monona County asking a divorce from defendant. On the same day, defendant accepted service of an original notice of the suit. She made no appearance in the case and on December 6, 1948, her default was entered and, upon hearing had, a divorce decree was awarded to plaintiff.

On June 25, 1949, defendant filed a petition to vacate the decree of December 6, 1948. She alleged that the Monona County District Court had no jurisdiction of the matter, because both parties were at the time of the commencement of the suit and of the decree residents of the state of California; and further, that certain representations had been made to her by plaintiff which induced her to sign the acceptance of service and to refrain from appearing in and contesting the suit. The trial court heard the issues so raised, and found as facts that at all material times plaintiff was a resident of Monona County, Iowa, and that no actionable fraud had been practiced upon defendant. Thereupon the court denied defendant's petition to set aside the decree of divorce and this appeal was taken.

I. Defendant's first complaint challenges the trial court's jurisdiction of the subject matter of the action. She says, and introduced evidence to prove, that both parties were residents of the state of California at all material times. Plaintiff introduced counterevidence, tending to show his residence in Monona County, Iowa. The issue so tried is properly raised by motion to vacate the decree. Girdey v. Girdey, 213 Iowa 1, 3, 4, 238 N.W. 432; Williamson v. Williamson, 179 Iowa 489, 161

N.W. 482; Beeman v. Kitzman, 124 Iowa 86, 99 N.W. 171. Here the defendant filed what she denominated a "Petition to Vacate Decree," but it appears to be, in effect, a motion to vacate, and the parties tried the cause fully without raising any question as to the procedure.

Jurisdiction of suits for divorce in Iowa is ruled by section 598.1, Code of 1950, which says: "The district court in the county where either party resides has jurisdiction of the subject matter of this chapter."

We find also in section 598.6, Code of 1950, material language, as follows: "If the averments as to residence are not fully proved, the hearing shall proceed no further, and the action be dismissed by the court."

From this latter section it appears that the trial court must in all cases find jurisdiction; that is, it must be made to appear. It follows, therefore, that we must assume such jurisdiction was found to exist upon the original hearing upon plaintiff's petition for divorce. But this is not conclusive, so as to become res adjudicata, as against allegations of fraud upon the court by concealment of the true residence. Williamson v. Williamson, supra. It is clearly established, however, that the burden rests upon the party asserting lack of jurisdiction, and fraud upon the court, or upon himself, to plead and prove such allegations. Snyder v. Snyder, 240 Iowa 239, 243, 35 N.W.2d 32; Girdey v. Girdey, supra; In re Estate of Kempthorne, 188 Iowa 70, 175 N.W. 857. Allied to this principle is that residence is largely a matter of intention, Hinds v. Hinds, 1 (Clarke) Iowa 36; Melvin v. Lawrence, admr., 203 Iowa 619, 213 N.W. 420; and that the courts are inclined to deal liberally with the claimant of a residence. Messenger v. Messenger, 188 Iowa 367, 373, 176 N.W. 260.

The foregoing principles of law are well-established and their application in the case at bar is not difficult. Both parties had originally resided at or near Onawa, in Monona County. Defendant, however, went to California, arriving there about March 1, 1944. She met plaintiff in 1947 when he went to Anaheim, California, to visit a relative. They were married in Las Vegas, Nevada, on April 5, 1947. Plaintiff had obtained employment in California and the parties remained in that state, except for a visit to Iowa in 1947 and another in 1948, plaintiff working

at various jobs. In October 1948, the parties having just returned from a trip to Iowa, plaintiff left defendant and returned to Onawa. She followed him shortly. Plaintiff came from California to Iowa in the family car, which was registered in his name, but had been bought chiefly, if not entirely, with defendant's money. Plaintiff had had jobs in Nebraska and South Dakota following his discharge from service in World War II, had left some clothes in Onawa, and had some mail accumulated there which was never forwarded to him. He at all times had an Iowa driver's license, and in 1949 procured a resident hunting and fishing license in Iowa. He joined the American Legion and Elks club in Anaheim, California, and when he applied for work with the city of Anaheim gave that city as his address. He testifies that he always considered Onawa, Iowa, as his residence, and always intended to return there and make his home; that his stay in California was merely while holding jobs which he considered temporary.

Immediately after defendant followed plaintiff to Onawa in October 1948 she instituted a separate-maintenance action against him in the Monona County District Court. The suit is referred to several times in the evidence, but the petition therein is not set out, and we do not know what allegations were made. However, it is the general, although not universal, rule that a separate-maintenance action may not be brought except where either the husband or wife resides. 42 C. J. S., Husband and Wife, section 615, page 220. This circumstance militates somewhat against defendant in her attempt to prove that neither of the parties had a bona fide residence in Iowa.

While defendant's action was pending she accepted service of the original notice of the plaintiff's divorce action herein. She made no appearance in the divorce action, but permitted plaintiff to prove up his case with her default entered. She returned to California and did not file her petition to set aside the decree, of which she had been advised very shortly after December 6, 1948, until June 25, 1949. The impression is strong that her real grievance was not so much that plaintiff procured the divorce, but that he did not return the automobile, which she says he promised to do.

In any event, we agree with the trial court that defendant

failed to carry the burden of proof resting upon her to show that there was lack of jurisdiction of the subject matter of the action, and that the trial court was induced to assume such jurisdiction by the fraud of the plaintiff.

II. Defendant's further allegation is that she was herself induced to sign an acceptance of service and to refrain from contesting plaintiff's action, by fraud practiced upon her. Thus, her first ground for setting aside the decree is based upon want of jurisdiction of the subject matter, and the second, upon want of jurisdiction of her person. Her evidence upon the second ground seems to rest upon two claims: That the plaintiff told her he was in some sort of trouble which necessitated the procurement of a divorce by him, the trouble being undefined except that someone was holding a bond over him; and a promise that when he got the divorce he would return the automobile to her and register it in her name. She alleges her reliance upon these statements of the plaintiff, and their falsity, and that thereupon she signed the acceptance of service, dismissed her pending separate-maintenance action, released the car, which she had under attachment, to plaintiff, and refrained from defending the divorce suit.

Defendant neither pleads nor argues that there was any confidential relation between the parties in which plaintiff was the dominant factor. Consequently, the burden was upon her to establish her allegations of fraud. Snyder v. Snyder, supra, and other cases cited in Division I are in point here also. It constitutes a burden which defendant did not carry. Assuming, arguendo, that a representation by plaintiff, if proven, that he was in trouble which necessitated a divorce would constitute actionable fraud, there is only defendant's own testimony that such a representation was ever made. Against her story is the unqualified denial of the plaintiff plus some circumstances which point the finger of doubt at the accuracy of her version. In telling of a conversation with the plaintiff at his sister's house when, she says, he told her of the "trouble," she testifies: "I don't know what he said to me down there, except there was trouble, and he really talked more to the rest of them than he did to me, so as to remember it." Again she said: "I didn't know what the trouble was; he would never tell me."

She refers to another conversation on the next day in which

plaintiff repeated and made somewhat stronger the statement that there was "trouble." This statement was made during a meeting in "Pat Morrow's office" in Onawa. At the close of the second meeting, the one in Mr. Morrow's office, defendant dismissed her pending action and permitted plaintiff to take the car. At another meeting a few days later she signed the acceptance of service. It will be noted that, if her story is true, there were others present on the first occasion when plaintiff spoke of the trouble, and very likely at the time of the meeting in Mr. Morrow's office also. Yet none of them was called to corroborate her. This situation takes much from the weight of her story.

Defendant relies somewhat at this point upon Petersen v. Petersen, 221 Iowa 897, 267 N.W. 719, although conceding that the facts in the Petersen case are stronger than here. In the cited case the wife was shown, by what the court considered the weight of the evidence, to have been unable to read the acceptance of service or the stipulation of settlement which she signed, and to have had no understanding of them. Also, the husband was a man of substantial means and the wife received nothing, but relinquished all rights in his property. In the instant case defendant knew what she was signing, and the plaintiff was a man of no assets except what interest he may have had in the automobile. His promise to return it to her when the divorce was procured, even if made, was not the basis for an action of fraud, but was merely promissory in character. 23 Am. Jur., Fraud and Deceit, section 38.

There have been in Iowa many cases in which divorce decrees have been set aside because of fraud upon the court, or upon the defendant. In most of these the jurisdiction has been based upon notice by publication, with no knowledge of the suit by the defendant until the decree had been rendered. Girdey v. Girdey, Messenger v. Messenger, and Williamson v. Williamson, all supra, and Korsrud v. Korsrud, 242 Iowa 178, 45 N.W.2d 848. Fraud more readily appears in this class of cases, in many of which there seems to have been an effort to prevent the defendant from knowing of the action until it was ended by a decree. In other cases there are inequities such as appeared in Petersen v. Petersen and Snyder v. Snyder, both supra. Of course the ultimate problem always is, did the court have jurisdiction of the subject matter,

and of the person of the defendant; with the underlying question, was the apparent jurisdiction upon which the court acted in granting the decree made so to appear by fraud practiced upon the court or the defendant? We find no such fraud proven in this case.

III. One other matter requires comment. The defendant knew when she signed the acceptance of service that plaintiff planned to use it in obtaining a divorce from her. She does not claim otherwise. If neither she nor plaintiff was a resident of the state of Iowa, she knew that also. Yet she made no protest, but if her present position is correct stood by with full knowledge while the plaintiff perpetrated a fraud upon the court. She had counsel available to her, since she had employed an attorney to bring her separate-maintenance action. She was promptly advised by plaintiff's counsel that the divorce had been granted, yet she did nothing for more than six months and after it became clear that plaintiff did not intend to return the automobile to her.

In Robson v. Kramer, admr., 215 Iowa 973, 245 N.W. 341, we passed upon a somewhat similar situation. The facts there were stronger against the party seeking to set aside the decree than against the defendant here, since it appeared that he had not only acquiesced in the bringing of the action but had instigated it. Nevertheless, many of the principles expressed by Justice Bliss, speaking for the court in the Robson case, are applicable here. Although she did not instigate the suit, the defendant accepted service and made no protest until it began to appear that she was not to get her quid pro quo—the automobile. It was only then that her conscience became active and she saw fit to call to the court's attention the fraud of which, if her story now is true, she must have been cognizant throughout. Whether or not she should be held to be estopped, it is apparent that her hands are not clean.

The judgment of the trial court was right.—Affirmed.

All JUSTICES concur, except MANTZ, J., not sitting.